HEEB *v*. PRYSOCK, ET AL.

4-9675                                    245 S. W. 2d 577

Opinion delivered January 28, 1952.

900

*J. Brinkerhoff* and *DuVal L. Purkins,* for appellant.
*Gibson & Gibson,* for appellee.

WARD, J. Appellant, Heeb, who was the defendant below, had about 210 acres of rice, and each of the appellees, Prysock, Underwood, Blanton and Stough had acreage planted in cotton which was either adjacent to or near said rice land. In July of 1949, Heeb employed the Terry Aircraft Company to spray his rice with 2,4-D in liquid form. While the spray was being applied to the rice appellees' cotton crops were damaged, as it is alleged, because of appellant's negligence in that the airplane flew over their crops, allowing the poison to escape and "settle" on their cotton, in that said poison drifted from appellant's field onto their cotton when appellant knew or should have known it would do so, and in failing to properly prepare the poison for distribution. Appellees, in separate complaints [later consolidated], alleged damages in specific amounts, and in each instance, after a jury trial, were awarded judgments in lesser amounts than sued for. From said judgments appellant properly prosecutes this appeal.

Appellant advances several reasons why he thinks the lower court should be reversed, as will presently appear, but apparently the reason which is urged most forcefully is that there is no substantial evidence to show negligence on his part. It is stressed that appellant, knowing of the possible danger to his neighbors, was careful to select a competent aviator with approved equipment, that the aviator took pains to view the situation beforehand, that he gave due regard to the proper time of day and wind conditions, that he flew at a proper and careful altitude, that the 2,4-D which was used contained the kind of base recommended by the U. S. Department of Agriculture, and that it is undisputed that the spray he used does not travel but goes to the ground. It is then pointed out that the sale, without liability, of 2,4-D by manufacturers has been approved by our own and federal decisions. Based on the above factual situation appellant argues that, to hold him liable would amount to making him an insurer.

We cannot agree with the above nor with the contention that there was no evidence of negligence to make a jury question. In the first place evidence was introduced to show that 2,4-D in liquid form would drift or spread. Farmers Bulletin No. 2005 of the U. S. Department of Agriculture was introduced in evidence and shows that, with a wind of five to seven miles per hour, it will drift 1,350 feet when released at a height of 20 feet and 550 feet when released at a height of 10 feet. Moreover, appellant was liable, of course, for any negligence on the part of the aviator if he was appellant's employee. If the aviator was an independent contractor appellant would likewise be liable for his negligence under the holding in *McKennon* v. *Jones, ante,* p. 671, 244 S. W. 2d 138. Without reviewing at length the testimony regarding negligence it suffices to say we find enough to make a question for the jury. Mrs. Underwood stated the spray from the plane was just like a fog at her house, that she closed the windows and door, that it made her sick and even the water in the bucket tasted bad, and that she saw the plane come over her place. It is admitted the plane passed over part of Prysock's farm, and that there

is some evidence to show it passed over Underwood and Stough's places. Mrs. Blanton, wife of the other appellee, stated she saw the plane over or near their place, that she did see it circling over Stough's place which joined theirs, and that their cotton was damaged.

In this same connection appellant also contends the proof was not sufficient to establish damages, particularly under the court's instruction No. 2, and that the court erred in refusing his requested instruction No. 5.

In each case the damage was calculated by comparing the yield on the damaged crops with the yield on lands in the vicinity and [in each case] on land cultivated by the plaintiffs, after a showing that the compared lands were essentially the same and were fertilized and cultivated in the same manner. Instruction No. 2 required that, in arriving at the extent of damages, consideration be given to the difference between the cost of producing the damaged crop and what it would have cost had there been no damage. The difference in cost of picking, hauling, ginning, etc., was shown, but appellant contends there is no evidence to show a difference in cost of cultivation. In support, the case of *Gibson* v. *Lee Wilson & Co.*, 211 Ark. 300, 200 S. W. 2d 497, where such factor was recognized, is cited. The cited case is not applicable here because it involved a failure to furnish water for a rice crop. Here there was no showing it would cost less to cultivate a cotton crop which had been damaged by 2,4-D than to cultivate one which had not been damaged. It appears reasonable to us that both damaged and undamaged crops would require the same kind and amount of cultivation.

By offering instruction No. 5, which was refused, appellant asked the court to limit Underwood's recovery to three-fourths of any damage proven. This instruction was requested because Underwood was a tenant and had to pay one-fourth of the cotton to his landlord. This instruction was properly refused. The reason will appear as we now consider the contention of appellant that this case should be reversed and dismissed as to Underwood

because, being a renter, he was not the party in interest and therefore had no right to maintain the action. He cites in support *Burns* v. *Vaughn*, 216 Ark. 128, 224 S. W. 2d 365. This case lacks authority here because a different relationship existed between landlord and tenant. The rule applicable here is the one announced in *Barnhardt* v. *State*, 169 Ark. 567, 275 S. W. 909:

"If the share-cropper raises a crop for the landlord, and is to receive a part of the crop from the landlord as wages for his work, the title to the crop grown vests in the landlord, and the share-cropper has a lien thereon for his labor. If the share-cropper is to pay one-half the crop for the use of the land, with the tools and team and feed therefor, then the title to the crop is in the tenant, and the landlord has a lien thereon. . . ."

The distinction seems to be, if the landlord pays the tenant for his work the title vests in the former, but if the tenant pays the landlord, as in this case, title vests in the tenant.

Appellant specifically objected to the court's general instruction No. 4 on the ground it did not take into consideration the damage that was done to appellees' crops because of rain and boll weevils. The instruction as given was correct because appellees' proof of damages was made after taking into consideration all damage done by rain and boll weevils. The foregoing also answers appellant's objection to the exclusion of testimony which was offered to show damage of the same nature.

We find no prejudicial error in the court's refusal to exclude the testimony of certain witnesses about conversations with appellant. On the one occasion when appellant was quoted as being willing to compromise, any possible error was cured by the court's cautionary admonition to the jury.

Finally, the jurisdiction of the court is challenged. The question arises this way. The damaged crops are located in Chicot County and that is where all the plaintiffs reside and where this action was commenced and tried. Service was had on appellant in Poinsett County. Originally Mrs. Carey Clark [appellant's landlady] was

made a co-defendant. Before the trial appellees took a non-suit as to Mrs. Clark. By this action, it is insisted, the court lost jurisdiction because there was no valid service on appellant. We do not so hold. It is provided in § 27-618 Ark. Stats. that where an action is local and not transitory and must be brought in a particular county, service may be had in any county. It is further provided in § 27-601 that actions for injury to real property must be brought in the county where the subject of the action [land] is situated. Therefore service on appellant in Poinsett County was good if injury to the growing crops was an injury to real property. Our court has so held. *Missouri Pacific Railroad Co.* v. *Henry,* 188 Ark. 530, 66 S. W. 2d 636; *Western Union Telegraph Co.* v. *Bush,* 191 Ark. 1085, 89 S. W. 2d 723, 103 A. L. R. 367.

Affirmed.

Mr. Justice McFADDIN concurs.