Argued March 8, reversed and remanded May 17, 1961

# LOE ET UX *v.* LENHARD ET AL

362 P. 2d 312

*Paul M. Reeder,* Hillsboro, argued the cause and filed briefs for appellants.

*Asa Lewelling,* Salem, argued the cause for respondent Lenhardt. On the brief were Lewelling & Gies, Salem.

*J. Ray Rhoten,* Salem, argued the cause for respondent Schnider. On the brief were Rhoten, Rhoten & Speerstra, Salem.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

## GOODWIN, J.

The plaintiffs, who raise seed crops on their farm near Silverton, appeal from judgments entered in favor of two defendants in an action of trespass for crop damage resulting from the spraying of chemicals by airplane.

The defendant Lenhardt operated the aircraft which applied the chemicals. The defendant Schnider owned the lands adjacent to the plaintiffs' farm and hired the services of Lenhardt. Upon the conclusion of the plaintiffs' case, Schnider moved for and was granted a judgment of involuntary nonsuit. Upon the conclusion of all the evidence, Lenhardt moved for and was granted a directed verdict.

■ The record reveals sufficient evidence from which a jury could have found that a defoliant sprayed from Lenhardt's plane drifted onto the land and crops of the plaintiffs and thereby inflicted some damage. The amount of that damage is immaterial for the purposes of this appeal.

■ Under *Martin v. Reynolds Metals Co.,* 221 Or 86,

342 P2d 790, cert. den. 362 US 918, 80 S Ct 672, 4 L Ed2d 739, the causing of chemicals to settle upon the crops of the plaintiffs was a trespassory invasion of their rights. Since harm resulted, the invasion can not be described as merely technical. See *Martin v. Reynolds Metals Co.*, supra at 95.

The plaintiffs in the case at bar alleged that the damage was done "casually and involuntarily", under ORS 105.815 (a timber-trespass statute). A demurrer was overruled and the defendants answered by general denials and separate affirmative defenses. The attempt to recover double damages under ORS 105.815 appears to have been abandoned during the trial. The plaintiff proceeded on the theory that both defendants were liable for an accidental trespass. The defendant Schnider alleged that any damage done was the sole responsibility of Lenhardt as an independent contractor. The defendant Lenhardt alleged that he was a "custom applicator" within the meaning of ORS ch 573, and that the plaintiffs were barred by their failure to comply with certain provisions of the code which will be considered hereafter.

■ The trial court held that Lenhardt, the custom applicator, was an independent contractor. The court then concluded that Schnider, as a landowner, was not liable to the plaintiffs for damages caused by chemicals sprayed from Lenhardt's plane. The record, which we will not recite here, fully supports the conclusion that Lenhardt was an independent contractor.

On the issues thus made up we have for decision the question whether an unintentional trespass causing crop damage imposes liability upon the perpetrators of the damage without a pleading or proof of fault upon their part. Specifically, upon what theory, if any, is one liable for the miscarriage of aerial spray-

ing activity, and what effect, if any, is to be given the relationship between the defendant independent contractor and the defendant landowner? The case is one of first impression in this court.

Damage from crop dusting has been a fruitful source of litigation elsewhere. See *Crop Dusting: Legal Problems in a New Industry*, 6 Stanford L Rev 69; Note, 43 Minn L Rev 531; and Note, 32 Tulane L Rev 146. It will be found from an examination of the cases collected in the notes cited that liability frequently has been imposed on the basis of fault, either a finding of lack of due care in spraying or a finding that the activity was unreasonable at the time and place. In some cases, it is difficult to detect what theory the court was following. Only in Louisiana, where the court was applying civil-law principles, have we found a direct holding for the plaintiff without a pleading or proof of negligence. *Gotreaux v. Gary*, 232 La 373, 94 So2d 293. We have found no case in which an intentional trespass was a material issue. We have likewise found no case which discussed the theory of unintentional trespass under the rule found in Restatement, 1 Torts 390, § 165, although a number of the cases imposing liability after a finding of negligence might well have fallen within the Restatement formula:

> "One who recklessly or negligently, or as a result of an extra hazardous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor thereof or to a thing or a third person in whose security the possessor has a legally protected interest."

See, e.g., *Pendergrass v. Lovelace*, 57 NM 661, 262 P2d 231; *Burke v. Thomas*, 313 P2d 1082 (Okla 1957);

*Alexander et al v. Seaboard Air Line R. Co.*, 221 SC
477, 71 SE2d 299; *Heeb v. Prysock et al*, 219 Ark 899,
245 SW2d 577; *Faire v. Burke*, 363 Mo 562, 252 SW2d
289.

The plaintiff tried the case on the theory that the
activity being conducted over Schnider's land was an
inherently dangerous activity within the rule found in
Chapter 15, Restatement, 2 Torts 1099, §§ 416, 426,
and 427, that one who employs a contractor to carry
on such an activity cannot thereby insulate himself
from liability. While Restatement, 2 Torts 1147, § 427,
is limited in its present form to cases involving "bodily
harm", a number of cases have applied the principle
stated therein to property damage where negligence
was shown. Typical airplane spraying cases which
have applied the nondelegability rule are *McKennon
v. Jones*, 219 Ark 671, 244 SW2d 138 (insecticide);
*Heeb v. Prysock et al.*, 219 Ark 899, supra (herbicide);
and *S. A. Gerrard Co., Inc. v. Fricker*, 42 Ariz 503,
27 P2d 678 (insecticide).

The authorities are practically uniform in holding
that crop dusting is an activity sufficently freighted
with danger to impose liability upon the landowner
having the work done if negligence is proven, even
though the fault, if any, is that of an independent con-
tractor. See cases cited in 2 Harper and James, The
Law of Torts (1956) 868, and Annotation, 12 ALR2d
436. However, with one exception, each of the cases
we have examined found sufficient evidence of negli-
gence on the part of the person applying the chemicals
to support a verdict based upon negligence. The ex-
ception was *Chapman Chemical Co. v. Taylor et al*,
215 Ark 630, 222 SW2d 820, which exonerated the
applicator as free from negligence but held the manu-
facturer of the chemical liable on the basis of strict

liability. This decision does not appear to have been widely followed, but is sometimes cited as a case based on strict liability. Prosser, Torts (2d ed, 1955) 334. It is more frequently cited as a case of "product liability". See Annotation, 12 ALR2d 438, 442.

The foregoing discussion of "inherently-dangerous activity" in negligence cases, however, is instructive only in a secondary way in the case at bar. The plaintiffs have not sought to prove negligence, but seek to impose liability upon the basis of damage flowing from an "innocent" trespass.

■ A trespass, once established, carries with it liability for resulting harm. *Martin v. Reynolds Metals Co.*, 221 Or 86, supra. The plaintiff here seeks to establish a trespass and a remedy therefor whether the trespass had its origin in conduct that was intentional, careless, or indeed innocent but fraught with a high degree of danger.

■ It is true that at common law every unauthorized entry upon the soil of another was a trespass. Prosser, Torts (2d ed, 1955) 54. But the Restatement of Torts takes the position that liability will be imposed in the case of an unintentional intrusion only when it arises out of negligence or the carrying on of an extra hazardous activity. Restatement, 1 Torts 359, § 158, and 390, § 165. The rationale of the Restatement in limiting liability for unintended invasions of land to actual damages flowing from negligent or extra hazardous conduct commends itself to this court and is consistent with our own cases on related problems. See *Martin v. Reynolds Metals Co.*, 221 Or 86, supra, where the trespass was intentional; *Bedell et ux v. Goulter et al*, 199 Or 344, 261 P2d 482, where the unintended invasion of the plaintiffs' land was caused by shock waves from

blasting; and *Gronn v. Rogers Construction, Inc.*, 221 Or 226, 350 P2d 1086, where the plaintiff sought to recover for the loss of baby mink and was denied recovery because the loss complained of was not within the scope of the risk involved in the use of dynamite by a highway crew.

If an activity is extra hazardous, the resulting harm produces liability in those states which follow the Restatement of Torts, whether the invasion of the legally protected interest is a trespass, Restatement § 165, private nuisance, § 822, or any other compensable injury caused by "ultrahazardous" activity, § 519.

The defendants urge that the spraying of the defoliant used in this case is not even an "inherently dangerous" activity under the law of negligence, much less such a hazardous enterprise as to come within the trespass rule of the Restatement of Torts, § 165. The evidence was in conflict whether the formula used, one quart of dinitro general in ten gallons of diesel oil, constituted an herbicide. Certainly the chemical agent was not as dangerous as 2-4-D and 2-4-5-T, which the testimony described as potentially harmful to a very high degree. However, the testimony concerning the mixture used in this case established beyond doubt that the spray had a swift and drastic effect upon certain kinds of vegetation including that of the plaintiffs.

■ When a question of this character is presented, it is the duty of the court to decide as a matter of law whether a given activity, in a given factual setting, is or is not extra hazardous. This is the rule in California, *Luthringer v. Moore*, 31 Cal2d 489, 190 P2d 1 (a fumigator case), and is found in Restatement, 3 Torts 47, § 520, *Comment h*, followed in *Chapman*

*Chemical Co. v. Taylor et al*, supra, 215 Ark at 643. The other choice is to leave the question to the jury. No authority has been found to support this course.

This court has always proceeded on the theory that the matter is properly addressed to the court, although the point has not been the subject of specific comment in the cases. In *Bedell et ux v. Goulter et al*, supra, for example, the court assumed without discussion that the question called for the exercise of judicial evaluation of the risks involved in blasting. Dean Prosser has stated that the traditional practice of the courts to determine whether or not an activity should be characterized as extra hazardous is the product of a judicial balancing of the utility of the defendant's conduct with the risk of harm if it miscarried. Prosser, *Selected Topics on the Law of Torts* (1953) 183. *Gronn et ux v. Rogers Construction, Inc.*, supra, 221 Or at 233, recognizes the judicial balancing of interests as a function of the court. The view that the court must determine what activities are extra hazardous is likewise concurred in by Ognall, *Some Facets of Strict Tortious Liability in the United States and Their Implications*, 33 Notre Dame Lawyer 239, 262, where the writer says that to leave the question to the jury would result in a "wilderness of single instances".

The judicial balancing of risk and utility is further discussed under the heading "Abnormal Things and Activities", Prosser, Torts, supra at 329. The author cites *Bedell et ux v. Goulter et al.*, supra, for the proposition that strict liability in blasting cases depends upon "when and how" the activity was conducted. This court has added a further ingredient in the balancing process in *Gronn et ux v. Rogers Construction, Inc.*, supra, where we held that the harm complained of

must be within the class of harm threatened by the conduct before liability will be imposed.

Such activities as crop dusting, the use of explosives in highway construction, or the use of impounded water for irrigation, are all accepted practices at appropriate times and places. We believe it is not a question where mere frequency of usage by specialists in a particular field should determine whether or not the activity should pay its way. Prosser, in *Selected Topics on the Law of Torts,* supra at 163, collects the cases, with special reference to *Bedell v. Goulter,* which indicate that the real issue involves the appropriateness of the activity at the time and place rather than whether or not the activity is one of natural or common usage. Cf. Restatement, 3 Torts 42, § 520, and comments therewith. See, also, Fridman, *The Rise and Fall of Rylands v. Fletcher,* 34 Can B Rev 810; McBratney, *New Trends Toward Liability Without Fault,* 26 Rocky Mt L Rev 140; Note, *Absolute Liability for Dangerous Things,* 61 Harv L Rev 515; Stallybrass, *Dangerous Things and the Non-Natural User of Land,* 3 Camb L J 376, 387.

All of the above authorities appear to agree that an activity, if undertaken advisedly, with foreknowledge of the high probability of harm in the event of a miscarriage, will produce liability. The disagreement among the writers has involved nomenclature as much as theory. Prosser's summary suggests that the tort really consists in the carrying on of an extra hazardous activity. The element of fault, if it can be called that, lies in the deliberate choice by the defendant to inflict a high degree of risk upon his neighbor, even though utmost care is observed in so doing. See *Selected Topics on the Law of Torts,* supra at 183, and Prosser, Torts, supra at 318.

The high degree of danger inherent in the spraying of agricultural chemicals by aircraft has been the subject matter of considerable legislative attention. The National Agricultural Chemicals Association, in the 1960 edition of its Pesticide Law Manual, listed twenty-four jurisdictions, including Oregon, which have legislation covering aerial applicators of herbicides.[1] Another five states have laws dealing with insecticides only.[2] Most of the legislation requires aerial applicators to be licensed, after examination by state authorities, and to show proof of financial responsibility.

[1] *Arizona:* Ariz Rev Stat Ann, §§ 3-371 to 3-386, incl.
    *Arkansas:* Ark Stat Ann 1947, §§ 77-131 to 77-136, incl.; §§ 77-201 to 77-211, incl.
    *California:* Cal Agr Code, §§ 160.1 to 160.97, incl.; §§ 1080 to 1080.9, incl.
    *Colorado:* Colo Rev Stat 1953, §§ 6-14-1 to 6-14-14, incl.
    *Connecticut:* Conn Gen Stat Ann, § 15-99.
    *Hawaii:* Hawaii Rev Laws 1955, §§ 27-1 to 27-13, incl.
    *Idaho:* Idaho Code (1959 Supp), §§ 22-2208 to 22-2230, incl.
    *Illinois:* Smith-Hurd Ill Ann Stat (1959 Supp), ch 5, § 87a.1.
    *Indiana:* Aeronautics Commission Regulation #2 (Burns Ind Ann Stat §§ 60-1501 to 60-1515, incl., empowering agencies to make regulations).
    *Kansas:* Kan Gen Stat 1949, §§ 2-2201 to 2-2215, incl., as amended; §§ 3-901 to 3-910, incl., (1959 supp).
    *Louisiana:* West's LSA Rev Stat, § 3-1621.
    *Michigan:* Mich Stat Ann 1958 (1959 Cum Supp), §§ 12.353 (1) to (10), incl.; §§ 12-366 (1) to (6), incl.
    *Minnesota:* Minn Stat Ann, §§ 20.31 to 20.35, incl.
    *Mississippi:* Miss Code Ann 1942, Recompiled 1956, §§ 5000-21 to 5000-33, incl.
    *Nevada:* Nev Rev Stat, §§ 555.260 to 555.460, incl.
    *North Carolina:* N C Gen Stat (1960 Replacement Vol), §§ 106-65.13 to 106-65.21, incl.
    *North Dakota:* N D Rev Code, §§ 2-0518 (1957); 28-0140, 28-0141 (1955).
    *Oklahoma:* Okla Stat Ann (1959 Cum Supp), Title 2, §§ 3-81 to 3-88, incl.
    *Oregon:* Ore Rev Stat, §§ 573.005 to 573.991, incl.
    *South Dakota:* S D Code (1960 Supp), §§ 22.12B01 to 22.12B07, incl.
    *Texas:* Vernon's Tex Civ Stat, Art 135 b-4, §§ 1 to 17a, incl.
    *Utah:* Utah Code Ann, §§ 4-4-14 to 4-4-28, incl. (1951).
    *Vermont:* Vermont Stat Ann, Title 5, § 1.
    *Washington:* Wash Rev Code, §§ 17.20.010 to 17.20.070, incl.

[2] *Alabama:* Ala Code (Recompiled 1958), Title 2, § 674.
    *Kentucky:* Baldwin's Ky Rev Stat, §§ 249.250 to 249.990, incl.
    *New Hampshire:* N H Rev Stat Ann, §§ 222:1 to 222:4.
    *Tennessee:* Tenn Code Ann, §§ 43:609 to 43:618, incl.
    *Wisconsin:* Wis Stat Ann, § 29.29 (4).

Arkansas additionally has declared to be a public nuisance any chemical which, after hearing, may be determined by the state plant board to be dangerous to persons, plants, or animals, and strictly forbids any sale or use of such chemicals except within the rules and regulations of the plant board. Ark Stat Ann 1947, §§ 77-201 to 77-211, incl.

The use of aircraft to distribute 2-4-D[3] is outlawed entirely in certain portions of Texas,[4] and is strictly controlled in several counties in California.[5] It would thus appear that the dangerous character of aerial spraying has been recognized by those legislative assemblies which have given attention to the matter. We believe the risk involved justifies the application of trespass principles under the Restatement of Torts, § 165, when actual damage results.

However common may be the practice of spraying chemicals by airplane, the prevalence of the practice does not justify treating the sprayer and the "sprayee" as the law of negligence treats motorists, leaving each to fend for himself unless one can prove negligence against the other. We think the better principle was stated for this court by Mr. Justice LUSK, who concluded a careful study of the application of strict liability to damages caused by shock waves from nonnegligent dynamite blasting:

> "* * * Basic to the problem is 'an adjustment of conflicting interests', *Exner v. Sherman Power Const. Co.*, supra: of the right of the blaster, on the one hand, to pursue a lawful occupation and the right of an owner of land, on the other, to its peaceful enjoyment and possession. Where dam-

---

[3] All sources agree that 2-4-D and 2-4-5-T require special handling. These chemicals are not involved in the case at bar.

[4] Texas Herbicide Reg. No. 1.

[5] California Bureau of Chemistry Announcement No. EP 96.

age is sustained by the latter through the non-culpable activities of the former, who should bear the loss—the man who caused it or a 'third person', as Judge Hand says, 'who has no relation to the explosion, other than that of injury'?" *Bedell et ux v. Goulter et al,* 199 Or, supra at 362, 363.

We need only substitute the words "sprayer" for "blaster" and "spraying" for "explosion", and the principle applies with equal force to the facts of the case at bar.

▮▮▮▮ Under the facts of this case, where a farmer hired a contractor to spray chemicals from an airplane, the activity was one capable of inflicting damage upon neighboring crops notwithstanding the exercise of the utmost care by the applicator. Under the circumstances, the damage which resulted was within the scope of the risk that droplets of spray cast into the air could, and probably would, drift onto the adjoining field. In such a case, it is the voluntary taking of the risk, Restatement, 1 Torts 390, § 165, rather than the intention to invade the plaintiffs' land, Restatement, 1 Torts 359, § 158, which imposes liability.

It follows that the landowner who hires the contractor is liable for the resulting harm. To this extent, the rule of nondelegability followed in the so-called inherently-dangerous-activity-negligence cases, Restatement, 2 Torts 1147, § 427, applies with equal or greater force to the conduct of extra hazardous activity. It was, accordingly, error to release the defendant Schnider by a judgment of involuntary nonsuit against the plaintiffs.

▮▮▮▮ We turn now to the statutory questions presented by the plaintiffs' appeal from the directed verdict in favor of the defendant Lenhardt. It was conceded that Lenhardt is a "custom applicator" as that

term is defined in ORS ch 573. The plaintiffs failed strictly to comply with the terms of ORS 573.145 (now found in ORS 573.210). The statute at all material times provided:

> "* * * **Report of loss to be filed before bringing action arising out of herbicide application.** No action against a custom applicator shall be commenced arising out of the use or application of any herbicide, unless the claimant has filed a verified report of the loss with the department, together with proof of service of such verified report of loss upon the custom applicator allegedly responsible and the person for whom such work was done within a period of 60 days from the occurrence of such loss or within 60 days from the date the claimant knew such loss had occurred. If the damage is alleged to have been occasioned to growing crops, the report shall be filed prior to the time when 50 percent of the crop was harvested * * *."

The defendant Lenhardt contends that the failure of the plaintiffs to comply with the statute bars their action against him. It is not claimed that the statute can affect the liability of Schnider.

Lenhardt admits that the plaintiffs did, within the time limited in the statute, file a report of loss with the Oregon State Department of Agriculture on a form supplied by that agency. The form, however, contained no provision for verification and as completed and filed the form was not verified. Neither were copies served as required by the statute, although both defendants received actual knowledge of the contents of the report from the department of agriculture. The defendants also concede that they investigated the loss.

The plaintiffs urge that their substantial compliance with the requirements of the statute satisfies the act when the legislative intent is clearly met. A state agency may have lulled the plaintiffs into a belief that

they had complied with the statute. The form is headed: "(APPLICATION FORM FOR O.R.S. 573.145)". The plaintiffs contend that they gave the defendant actual notice by filing with the department, and that, if the notice was formally defective, no possible prejudice could have resulted.

In the field of negligence actions against municipal corporations, where a verified claim is commonly made a condition precedent to the bringing of the action, the right to sue the governmental unit at all is a creation of the legislature and is thus clearly subject to legislative restrictions. *Cooper v. County of Butte,* 17 Cal App2d 43, 61 P2d 516; *Spencer v. City of Calipatria,* 9 Cal App2d 267, 49 P2d 320; and cases collected in Annotation, 41 ALR2d 883. No such considerations apply in this case.

When a claim has been filed, full investigation made, and the claim rejected for some reason not connected with the form of the notice or its manner of service, the defects in the notice do not bar a meritorious action based upon a statutory right against a municipality. *Greenberg v. Waterbury,* 117 Conn 67, 167 A 83; *Nevala v. City of Ironwood,* 232 Mich 316, 205 NW 93, 50 ALR 1189; *Hunter v. Village of Durand,* 137 Mich 53, 100 NW 191; *Lindley v. City of Detroit,* 131 Mich 8, 90 NW 665; *Bowles v. Richmond,* 147 Va 720, 129 SE 489, 133 SE 593; *Hammock v. Tacoma,* 40 Wash 539, 82 P 893. *A fortiori,* the foregoing rule of liberal construction should apply when an attempt is made in good faith to comply with a statute which purports to limit a constitutional right to redress for injury to property caused by a private party who enjoys no special immunity.

Two states have statutes which require the verified report of loss within sixty days after the damages

become known to the owner of the affected crop, but in both states the failure to file the notice gives rise only to a disputable presumption that no damages were suffered. Failure to file does not bar the action. Ariz Rev Stat Ann, § 3-384; Cal Agr Code, § 160.96. North Dakota is the only other state in which we have found a statute which, like ORS 573.210, purports to bar the action. N D Rev Code (1957 Supp), §§ 28-0140, 28-0141. We believe any such statute requires liberal construction in favor of the injured party.

Statutory requirements of verification also must be complied with in order to give a claim against a decedent's estate priority over general creditors, *Kirchner v. Clostermann*, 128 Or 183, 272 P 278, 299 P 995, and *Estate of H. Gibson & Son*, 124 Or 193, 264 P 371, but it will be noted that the nonclaim statute does not bar the claim in the event of defective filing. It only postpones the claim. ORS 116.510.

This court has also held that one who seeks to avail himself of a remedy unknown to the common law but created by statute must bring himself strictly within the operation of the statute. See *McCain v. State Tax Com.*, 227 Or 486, 360 P2d 778, and cases cited therein. These cases, however, do not apply to the opposite type of statute, which restricts the exercise of constitutional rights.

When it is seen that the purpose of ORS 573.145 was served by the filing of the plaintiffs' claim and that the defendants received actual knowledge thereof, there is no reason to deny the plaintiffs their day in court in this case. The statute which requires the filing of the verified claim within sixty days of the injury is a manifest limitation upon a common-law right.

A further reason why substantial compliance with

ORS 573.145 sufficed to preserve the plaintiffs' right of action in this case is the fact that the claim which was filed was prepared on a form supplied by the state agency charged with the administration of the law. To deny a remedy on these facts would convert the statute into a trap for the unskilled, even though the purposes of the statute were served and no prejudice resulted to the defendants.

With reference to the failure to make formal service of the claim, we apply the rule found in *Burmek v. Miller Brewing Co.*, 2 Wis2d 330, 86 NW2d 629, where a statute prescribed service of a notice of claim in the manner required for service of summons before an action would lie. The court held that where the defendant received a letter in due course of mail, which otherwise complied with the notice statute except that service was not made, substantial compliance was sufficient in the absence of a showing that the defendant had been prejudiced. Here, again, we believe the facts in the case at bar make a stronger case for substantial compliance than in the Wisconsin case. The State Department of Agriculture is charged with assisting farmers in the handling of claims under the statute. The record does not disclose what led the plaintiffs to believe that they had done all that was necessary before the commencement of an action, but the record does disclose that no party was prejudiced by the failure to verify or serve the papers supplied by the department.

For the foregoing reasons we hold that the plaintiff substantially complied with the requirements of ORS 573.145 under the peculiar facts of this case. It was therefore error to direct a verdict for the defendant Lenhardt. We express no opinion upon constitutional questions which were not raised in the trial court.

The judgment of nonsuit in favor of the defendant Schnider is reversed, as is the judgment entered upon the directed verdict for the defendant Lenhardt. The cause is remanded for a new trial.

Reversed and remanded.

PERRY, J., dissents.