O. P. LEONARD, Trustee et al., Appellants.

v.

G. R. ABBOTT et al., Appellees.

No. 7355.

Court of Civil Appeals of Texas.

Texarkana.

May 1, 1962.

Rehearing Denied June 5, 1962.

Harris, Anderson, Henley & Rhodes, Dallas, Jenkins Garrett, and Robert Stahala, John McBryde, Cantey, Hanger, Johnson, Searborough & Gooch, Leland A. Hodges, Ft. Worth, for appellants.

McKinney & McKinney, Cooper, Fisher, McLaughlin & Harrison, Moore & Lipscomb, Paris, for appellees.

CHADICK, Chief Justice.

This is a venue case. The trial court denied a plea of privilege. The judgment is affirmed.

G. R. Abbott and eighty other parties as plaintiffs instituted a lawsuit in a District Court of Lamar County naming O. P. Leonard, Trustee, and eight others, including Claude Hall and Hall's Aero Spraying, Inc., as defendants. All defendants were residents of Tarrant County except Hall, a resident of the State of Arkansas, and Hall's Aero Spraying Inc., an Arkansas corporation, not authorized to do business in the State of Texas. Unless the context otherwise requires, reference hereafter to Hall shall include Hall's Aero Spraying Inc., and reference to Leonard includes the remaining defendants collectively. The suit was for damage inflicted to growing crops in Lamar County by herbicides from an aerial spraying application made to the Leonard farm in Hopkins County.

By agreement with Leonard, Hall became obligated to and made an aerial application during May and June, 1960, of liquid hormone herbicides known as 2-4-D and 2-4-5-T to a thousand acre tract of land along the Sulphur River for the purpose of destroying noxious weeds, brush and timber. The herbicides were capable of destroying growing cotton and vetch. No permit to make aerial application was obtained as required by the Herbicide Control Act, House Bill 402, Regular Session 53rd Legislature, Chap. 349, p. 854; Art. 135b-4, Vernon's Ann.Texas Civ.St., nor is it contended that the statute, and regulations promulgated thereunder, were complied with in detail.

The plaintiffs' affidavit controverting the Leonard plea of privilege claimed the venue of the case to be in Lamar by the terms of Subdivision 9a, Art. 1995, V.A.T.R., adopted their original petition and alleged generally that the brush poisoning operation mentioned in the peti-

tion was negligent conduct and the proximate cause of the injuries suffered by the defendants. In their petition they plead that in the performance of his work Hall sprayed or allowed the herbicide used to drift upon plaintiffs' land and crops. In the same count the plaintiffs charged that application of the herbicide by spraying was inherently dangerous and that the act or omission alleged was the proximate cause of the plaintiffs' injuries. The allegations of the plea of privilege will be liberally construed. 1 Tex.Civ.Practice, 447, § 4.49; Wood v. Fondren, Tex.Civ.App., 131 S.W.2d 1070, N.W.H.; General Motors Acceptance Corporation v. Boyd, Tex.Civ.App., 120 S.W.2d 484, N.W.H. The plaintiffs have, viewing their pleadings as a whole, alleged as acts or omissions constituting negligence that the defendants sprayed the herbicides upon their crops growing in Lamar County, or allowed herbicides to drift upon their crops in that county.

▮ The evidence does not establish that Hall's airplane making the herbicide application was in or over Lamar County during the spraying operation. On this fact the defendants in the trial court, the appellants here, take their stand that subdivision 9a, Art. 1995 can have no application to the lawsuit. The appellants point to and rely upon the clear language of · the subdivision saying a suit based upon any form of negligence may be brought in a county "where the act or omission of negligence occurred." The appellants argue that since Hall's personnel, equipment, plane, etc., were not in or over Lamar County, that it was physically impossible for a negligent act or omission in the spraying operation to have occurred in Lamar County.

At first impression the appellants' argument appears sound. However, bearing in mind the allegation that the appellants allowed the herbicide to drift upon the appellees' land, it may readily be seen that the alleged act or omission could easily occur in Lamar County, though Hall and the equipment used was physically in Hopkins County.

Perhaps some confusion can be avoided by the use of examples. A gardener may be imagined standing with a waterhose in his hand on one side of a fence, spraying water on his garden. The gardener might spray water into a wind current and the current carry it as a mist across the fence where the water droplets would fall to the ground. The drift of such moisture would occur both on the side of the fence where the gardener stood and across it where the droplets fell. Thus the drift of mist would occur across the fence from the gardener, though he did not cross the fence himself or permit his hose to cross it. As another example, it may be imagined that a car owner might allow his driverless car to roll (drift) for some distance down a road which crossed a county line. If the act of negligence charged against him was allowing the car to roll, it is easy to see that the charged negligent act of rolling occurred in both or either of the counties.

Alleging that the herbicides were allowed to drift is a positive way of alleging a continuous negligent omission. Properly, it might be said that allowing the herbicides to drift is a component element of a broad divisible issue. However, here the phase of allowing the herbicide to drift upon the land of the appellees is charged as negligence, and issue was joined thereon by the parties and proof made. Decision on the disputed question of allowing the herbicides to drift seems proper. See Schultz v. Harless, Tex.Civ.App., 271 S.W.2d 696, N.W.H.; Vrazel v. Bieri, Tex.Civ.App., 294 S.W.2d 148, N.R.E.; Parish v. Dee, Tex.Civ.App., 327 S.W.2d 449. The trial judge presumably found the evidence to support the allegation, and that such negligence was the proximate cause of the several plaintiffs' injuries. That Leonard and Hall owed the appellees a duty not to allow the herbicides to drift will be discussed hereafter.

The conclusion stated requires a discussion of several additional questions. Immediate attention will be directed to the absence or insufficiency of evidence to support the trial judge's presumed factfinding upon the negligence issue discussed. The evidence is circumstantial. Admittedly Hall applied the herbicides in liquid form by aerial spraying. There is evidence that an application was made when the wind was blowing from ten to fifteen miles an hour. The direction of the wind was from the Leonard farm towards the land where the appellees had their crops. Growing cotton plants and some other plants react in a peculiar and recognizable way to the herbicides that Hall used. Foliage on cotton and other plants was damaged on a swath beginning at the Leonard farm and extending to and across the appellees' lands. Hall's was the only aerial application of a hormone herbicide made in the affected area during the period of time involved. These facts and the inference arising from them are sufficient to support the trial judge's presumed finding that the appellants allowed the herbicide to drift upon the lands and crops of appellees.

It is conceded by all parties that Hall was an independent contractor. In Pitchfork Land and Cattle Company v. King, Tex.Civ.App., 346 S.W.2d 598, the Supreme Court exonerated the landowner of liability because the aerial application of a herbicide inflicting damage upon the land of other owners was made by his independent contractor. The Pitchfork case arose in a county excluded from the operation of the Herbicide Control Act; Art. 135b–4, the law regulating the sale and use of hormone herbicides. The opinions of the Supreme Court and the Court of Civil Appeals in that case do not mention or indicate that questions of the inherently dangerous nature of aerial application of hormone herbicides or the non-delegability of the employer's duty were considered. Because it appears such issues were not before the courts the case does not control here.

In the Herbicide Control Act the Legislature by implication declared the use and application of such herbicides to be inherently dangerous in the areas of the state not excluded from the Control Act's provisions. The declared purpose of the law is to invoke the police powers of the State to regulate the sale, use and transportation of hormone herbicides such as those used in this case. It authorizes the Agriculture Commissioner to promulgate rules and regulations in that respect. Sec. 5(c) of the Act provides "When the facts indicate that any type of application does not create a hazard in any particular area, the Commissioner shall exempt * * * such area * * *." This subdivision clearly implies that the Legislature deems the unregulated application of hormone herbicides to be hazardous to beneficial crops and plants in the areas of the state to which it applies, but gives latitude for a determination to the contrary in areas where the facts justify a different conclusion. Then there are other provisions of the Act evidencing this implied determination by the Legislature. The implication is found in the provisions of the Act making it unlawful for any person to be a dealer in herbicides without first obtaining a permit; and making it unlawful to apply herbicides except in compliance with the act and promulgated rules and regulations and under supervision of the employer and independent contractor.

The evidence in this record is clear that neither Leonard nor Hall obtained a permit to make aerial application of the herbicide, and that numerous requirements of the Herbicide Control Act, and regulations thereunder, were not complied with. In II Restatement of the Law of Torts, 1149, Sec. 428, it is said:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which

involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

The principle of the quoted rule should have application in this case, and should be adopted and applied to property and property rights.

Aside from the legislative findings and enactment the courts of this state have always held the employer liable for injuries caused by an independent contractor's negligence in the performance of inherently dangerous work. See Independent Contractors, 30 T.J.(2) 516, Sec. 28. The facts in this case show that a very light application of the hormone herbicides used by Hall was capable of destroying certain species of plant life and has a very adverse effect upon growing cotton. It was known to Hall and Leonard that cotton and vetch crops, susceptible to damage by the herbicides employed, were planted in the vicinity of the land Leonard proposed to treat, and that herbicides used would have a deleterious effect on such crops if it reached them.

The text quoted above, II Restatement of the Law of Torts, 1148, Sec. 427, Comment "a", gives this definition of an intrinsically dangerous activity:

"The words 'inherently dangerous work' are used to indicate * * * that the nature of the work itself, or of the instrumentalities which must necessarily be used in doing it, * *, if unskillfully and carelessly done [or used], involves a grave risk of serious bodily harm or death." (bracketed words inserted).

While the definition refers to serious bodily harm or death, the same principle expressed should govern work that involves a grave risk of injury to property and property rights.

The aerial application of herbicide, if unskillfully and carelessly done, involves such grave risk of injury to the growing crops in the vicinity of the spraying that the employer should not escape liability when the work is negligently done by an independent contractor. Courts of other jurisdiction have held that aerial spraying and dusting of chemical defoliants, insecticides, and herbicides are activities having such potential for injury as to be classed as inherently dangerous. See Loe v. Lenhardt, 227 Or. 242, 362 P.2d 312, where it is said: "The authorities are practically uniform in holding that crop dusting is an activity sufficiently freighted with danger to impose liability upon the landowner having the work done if negligence is proven, even though the fault, if any, is that of an independent contractor." See also McKennon v. Jones, 219 Ark. 671, 244 S.W.2d 138; Heeb v. Prysock, 219 Ark. 899, 245 S.W.2d 577; S. A. Gerrard Co. Inc. v. Fricker, 42 Ariz. 503, 27 P.2d 678. Each of the cited cases have applied the nondelegability rule, though liability was founded upon trespass or other basis than negligence.

The evidence supports the trial judge's implied conclusion that Leonard owed the appellees a non-delegable duty not to allow the herbicide sprayed by Hall to drift upon and damage their crops. As previously stated, allowing such herbicides to drift in Lamar County was found by the trial court to be negligence, and the finding is supported by the evidence.

Hall did not appeal from the trial court judgment. Appellee Leonard's several points of error are overruled and the judgment of the trial court is affirmed.