This appeal is from an order dismissing an action brought by the Boroughs against Leo Joiner. The complaint stated in substance that:
On July 26, 1973, Leo Joiner procured or employed J.F. Carter to make a custom application of pesticide by means of an aircraft in flight to his crops in the immediate vicinity of the fish pond of the plaintiffs in Monroe County; that the lake of the plaintiffs was built in 1965 at a cost of approximately $15,000 and was stocked with game fish and used as a recreation area for fishing and water pleasure and added to the value of the adjoining real estate; that on or about July 27, 1973, large numbers of fish started dying in the plaintiffs' pond as well as in another pond in the vicinity of plaintiffs' pond, and that the fish continued to die until all of the fish in the pond were dead; that the plaintiffs restocked the pond but the pond was still unfit for its original purpose; that scientific tests conducted on the fish and water established that the fish kill was caused by the pesticide Endrin; that Endrin is an intrinsically dangerous substance many times more toxic and lethal than DDT to humans, animals, and aquatic life; that the intrinsically dangerous qualities of Endrin are substantially augmented when spread by aerial application, and it is often impossible to contain the poison in the target area and it sometimes drifts several miles from the target area as it did in this case; that from July 26, 1973, through September 1, 1973, spraying operations were conducted on nearby farm land owned by defendant Joiner, the pesticide was permitted to escape or drift onto the property of plaintiffs and into plaintiffs' fish pond and, as a proximate consequence, the lake was contaminated and the fish died and the value of the plaintiffs' land was depreciated. The complaint also alleged that Carter was an independent contractor employed by Joiner to do the spraying.
The trial court dismissed the case on motion for summary judgment filed by Joiner on the ground that the plaintiff could not *Page 342 
recover against the landowner unless it was alleged and proved that Carter, the man who flew the airplane and sprayed the landowner's cotton, was an agent of Joiner. The allegation was that Carter was an independent contractor. Summary judgment was granted on the pleadings and no affidavits were filed by either party.
The general rule in this state, and in most others, is that:
 ". . . one is not ordinarily responsible for the negligent acts of his independent contractor. But this rule, as most others, has important exceptions. One is that a person is responsible for the manner of the performance of his nondelegable duties, though done by an independent contractor, and therefore, that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor. [Citations Omitted]." Dixie Stage Lines v. Anderson, 222 Ala. 673, 675, 134 So. 23, 24 (1931).
See also: Alabama Power Co. v. Pierre, 236 Ala. 521,183 So. 665 (1938).
It is also generally recognized that one who employs a contractor to carry on an inherently or intrinsically dangerous activity cannot thereby insulate himself from liability.Montgomery Street Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757
(1905); Mayer and Alderman of Birmingham v. McCary, 84 Ala. 469,4 So. 630 (1887).
Although the courts have had some difficulty in stating a precise definition of activity which is inherently or intrinsically dangerous, the cases seem to agree that an intrinsic danger in an undertaking ". . is one which inheres in the performance of the contract and results directly from the work to be done, not from the collateral negligence of the contractor, and important factors to be understood and considered are the contemplated conditions under which the work is to be done and the known circumstances attending it." 41 Am.Jur.2d, Independent Contractors, § 41.
The rule is stated in Restatement of the Law, Torts 2d, Vol. 2, § 427 (1965), as follows:
 "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."
Crop dusting and spraying having been the subject of much litigation in recent years. Many courts have categorized such activity as inherently or intrinsically dangerous, making inapplicable the rule that a principal is not liable for the torts of his independent contractor. Typical of the airplane spraying cases which have applied the nondelegability rule areHeeb v. Prysock, 219 Ark. 899, 245 S.W.2d 577 (1952); McKennonv. Jones, 219 Ark. 671, 244 S.W.2d 138 (1951); Miles v. Arena Co., 23 Cal.App.2d 680, 73 P.2d 1260 (1937); and Gerrard Co. v.Fricker, 42 Ariz. 503, 27 P.2d 678 (1933).
The reasoning of the courts which have dealt with this problem has been summarized in 12 A.L.R.2d 438:
 "There can be no doubt that farmers, orchardists, and, in fact, all horticulturists have the right to use the many beneficial new dusts and sprays to protect their growing fruits and vegetables from the ever-increasing invasion of insects, worms, borers, weevils, etc., and to assure the best possible product by dusts and sprays which eliminate weeds that would otherwise choke out or stunt growth.
 "But such preventive measures cannot be used with absolute impunity. Due care must be exercised in seeing to it that the weather conditions are right, that the operator spreading the material does not place it so close to fence lines that cattle can reach through and eat poisoned grass; that airplane spreaders cut off the dust or spray distributor when making *Page 343 
turns over the crops of others which the material would injure or over pasture land of others which would be poisoned for animals thereon, and that they do not spread dust when the wind is so blowing as to float it to the crops of others or the hives of bees and kill them. Care must likewise be taken that poisonous spray is not blown on pasture land.
 "In other words, an owner of premises may be liable to damages for spreading poisonous dusts and sprays negligently."
The Legislature of Alabama has recognized that insecticides and pesticides are intrinsically dangerous and has adopted statutes regulating the sale, distribution and application of those products in this state. The legislature stated its purpose in enacting the Alabama Pesticide Act of 1971 (Title 2, § 337 (9a), et seq.). § 337 (12a) is as follows:
 "The purpose of this article is to regulate, in the public interest, the application of pesticides. In recent years many new materials have been discovered or synthesized which are valuable and necessary for the control of insects, plant diseases and weeds. However, such materials when misused may seriously injure health, property, crops, wildlife, bees and fish. Pesticides may also injure man or animals, either by direct poisoning or by gradual accumulation of poisons in the tissues. The drifting or washing of pesticides into streams or lakes can cause appreciable damage to acquatic [aquatic] life. A pesticide applied by aircraft or ground equipment for the purpose of controlling diseases, insects or weeds in a crop which is not itself injured by the pesticide may drift, sometimes for miles, and injure or contaminate other crops and other things with which it comes in contact. Therefore, it is deemed necessary and in the public interest to provide some means of regulating the application of pesticides."
Under the statutory scheme adopted by the legislature, such products must be registered with the Department of Agriculture and Industries. Each must bear a label describing the degree of toxicity, and each must bear warnings of the dangers inherent in the use thereof. One must have a permit to purchase such products. Aviators must be licensed to engage in crop dusting or spraying and must pass an examination satisfactory to the Commissioner of Agriculture demonstrating knowledge of the dangers involved in the application thereof.
We hold that aerial application of insecticides and pesticides falls into the intrinsically or inherently dangerous category and, therefore, the landowner cannot insulate himself from liability simply because he has caused the application of the product to be made on his land by an independent contractor.
In so holding, we do not adopt the view, as some courts have done, that such activity is ultrahazardous thereby rendering one strictly liable, notwithstanding his exercise of the utmost care. Leo v. Lenhardt, 227 Or. 242, 362 P.2d 312 (1961);Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957).
The test of liability on the part of the landowner is one of reasonableness. Liability is not absolute but is imposed on the landowner for his failure to exercise due care in a situation in which the work being performed is sufficiently dangerous that the landowner himself has a duty to third persons who may sustain injury or damage from the work unless proper precautions are taken in the performance thereof.
The judgment appealed from is, therefore, reversed and the cause is remanded.
REVERSED AND REMANDED.
HEFLIN, C.J., and MADDOX, JONES and BEATTY, JJ., concur. *Page 344