Violet FRAZIER, Appellant,

v.

Frank MOELLER et al., Appellees.

No. 11–83–227–CV.

Court of Appeals of Texas, Eastland.

Dec. 22, 1983.

Rehearing Denied March 1, 1984.

John P. Camp, Harman Camp, Camp, Jones, O'Neill & Hall, Fort Worth, Pete Baker, John D. Hart, Glandon, Erwin, Scarborough, Baker, Choate & Arnot, Abilene, for appellant.

Gerald Huffaker, Huffaker & Green, Tahoka, Ed McConnell, Mann & McConnell, Amarillo, for appellee.

DICKENSON, Justice.

This interlocutory venue appeal[1] presents the question whether a landowner is subject to liability for damages to his neighbor's crops caused by the negligence of an independent contractor[2] who makes aerial application of chemicals in order to kill mesquite and brush.

Frank Moeller and numerous other cotton farmers sued Violet Frazier, J.M. Christensen and Christensen Aviation, Inc. for damage to their cotton crops on approximately 32,000 acres of land. Defendants' pleas of privilege were overruled by the trial court. Violet Frazier appeals.[3] We affirm.

We must affirm the judgment of the trial court if it can be upheld on any legal theory that is supported by the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353 at 358 (Tex.1977); *Wilhelm v. Wilhelm*, 634 S.W.2d 760 at 761 (Tex.Civ.App.—Eastland 1982, no writ). We must presume that the trial court resolved all factual disputes in support of its order overruling Violet Frazier's plea of privilege. Viewing the evidence in this light, the following facts were established in connection with the venue appeal.

J.M. Christensen is president and sole stockholder of Christensen Aviation, Inc. He has been in the "aerial application business" since 1973. He uses an airplane to apply herbicides and insecticides. About 10% to 12% of his work involves brush control. Sometime in May of 1981 Violet Frazier contacted him and asked him to spray chemicals on the brush on her ranch in Haskell County. He had sprayed for her before. On each occasion she furnished some of the herbicide.

Christensen sprayed the brush on the 2100 acre Frazier Ranch on June 8, 9, 11 and 18 of 1981. He used 2,4–D and 2,4,5–T. Both of these chemicals are listed in the herbicide control statutes,[4] but Haskell County was an "exempt" county in June of 1981. There is evidence to support implied findings that Christensen sprayed the Frazier ranch after cotton began to grow on neighboring farms and that he was negligent in spraying when the winds and temp-

---

1. This appeal was pending on the effective date of the 1983 amendments to TEX.REV.CIV.STAT. ANN. art. 1995 (Vernon Supp.1982–1983). Consequently, the 1983 amendments do not apply to this appeal. See 1983 TEX.SESS.LAW SERV., ch. 385, sec. 3, at 2124.

2. We agree with the landowner that the aerial applicator of the herbicides was an independent contractor. See *Pitchfork Land and Cattle Company v. King*, 162 Tex. 331, 346 S.W.2d 598 (1961).

3. The appeals by J.M. Christensen and Christensen Aviation, Inc. were dismissed for want of prosecution after they failed to file their briefs within the time allowed by TEX.R.CIV.P. 385.

4. In 1981 these statutes were found in TEX. REV.CIV.STAT.ANN. art. 135b–4 (Vernon 1969). They are now found in TEX.AGRIC.CODE ANN. secs. 75.001 to 75.024 (Vernon 1982).

eratures were too high for aerial spraying of 2,4–D and 2,4,5–T. The high temperatures cause the chemicals to become volatile and to form gasses which drift in the wind. The cotton farms are north of the Frazier ranch, and the winds were from the south during the aerial application of these chemicals.[5] An inspector for the Texas Department of Agriculture testified that approximately 32,000 acres of cotton were damaged, greatly reducing the yield and quality of the cotton.[6]

The warnings on the containers of 2,4–D state in pertinent part:

> Crops such as tomatoes, *cotton*, vegetables, grapes, fruit trees, soybeans, peas, tobacco or beans, and flowers or ornamentals *are very susceptible to 2,4–D weed killers....* Do not allow spray mist to drift onto desirable crops or plants—*even minute quantities of the spray may cause severe injury....* Do not spray on windy days.... CLEAN CROP LV 6 is one of the most highly concentrated 2,4–D weed killers available.... (Emphasis added)

The warnings on the containers of 2,4,-5–T state in pertinent part:

> Warning, do not apply esteron 245 directly to *or otherwise permit it to come into direct contact with* vegetables, flowers, grapes, fruit trees, ornamentals, *cotton*, black locust or other desirable plants which are sensitive to 4,5,5–T and *do not permit spray mists containing it to drift onto them, since even minute quantities of the spray may cause severe injury* during both growing and dormant periods.... *Do not apply by airplane in the vicinity of cotton,* grapes or other desirable 2,4,5–T susceptible vegetation. *At higher tempera-*

*tures vaporization may cause injury to susceptible plants growing nearby....* (Emphasis added)

■ TEX.REV.CIV.STAT.ANN. art. 1995, subdivision 9a (Vernon Supp.1982–1983) provides that a suit based upon negligence may be brought in the county where the negligence occurred. One of the essential venue facts is that the act or omission of negligence was "that of the tort-feasor, in person, or that of his servant, agent or representative acting within the scope of his employment."

This subdivision has been held applicable in a suit against a landowner for damages caused by herbicides applied by aircraft by an independent contractor. *Gragg v. Allen*, 481 S.W.2d 452 at 453 (Tex.Civ.App.—Waco 1972, writ dism'd), discusses the issue before us in the following language:

> The record reflects that the use of aerial application of poisonous herbicides as 2,4–D, and 2,4,5–T are extremely dangerous, especially when conducted around or near broad-leaf plants as cotton.

> And an employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous....

> (T)he aerial spraying of chemical defoliants and herbicides are activities having such potential for injury as to be classed as inherently dangerous.

See also Annotation, Liability for Injury Caused by Spraying or Dusting of Crops, 37 A.L.R.3d 833–873 (1971); RESTATEMENT OF THE LAW, TORTS 2d sec. 414a and sec. 427; *Leonard v. Abbott*, 357 S.W.2d 778 at 782 (Tex.Civ.App.—Texar-

---

**5.** The map prepared by the Texas Department of Agriculture in connection with its inspection of the damaged cotton crops shows that the nearest cotton farm was approximately five miles north of the Frazier ranch and that damaged cotton was found as far as 40 miles from the ranch.

**6.** Plaintiffs alleged several hundred thousand dollars for the losses on their 1981 cotton crop plus $100 per acre reduction in market value of

their farms because of the reduction of their "projected yields" under government agriculture programs. One farmer testified that his undamaged cotton made close to 400 pounds of cotton per acre but that the damaged cotton made less than 100 pounds of cotton per acre. There was also a difference in the quality of the cotton. The damaged cotton was of a lower grade and sold for less money per pound.

**158**

kana 1962), reversed on other grounds, 366 S.W.2d 925 (Tex.1963).

Appellant relies on *Pitchfork Land and Cattle Company v. King,* supra. That case held that the aerial sprayer was an independent contractor, but it did not address the question whether the aerial application of herbicides in an area where cotton is growing is inherently dangerous, creating a nondelegable duty. We have found no cases which support appellant's position on this issue.

Both points of error are overruled, and the trial court's order overruling the plea of privilege is affirmed.