Argued January 14, affirmed February 10, 1960

# OLSON *v.* RIVER VIEW CEMETERY ASSOCIATION
### 349 P. 2d 279

*Nels Peterson,* Portland, argued the cause for appellant. With him on the brief were Frank Pozzi, Berkeley Lent and Donald R. Wilson, Portland.

*Philip A. Levin,* Portland, argued the cause for respondent. With him on the brief were Phillips & Sandeberg and David Sandeberg, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Duncan, Justices.

SLOAN, J.

This was an action for personal injury plaintiff alleged he sustained while acting within the scope of his employment by defendant. The complaint pur-

ported to allege violations of the Basic Safety Code on the part of defendant as well as violations of the Employer's Liability Act. During the course of the trial, on the merits of the case, the plaintiff amended his complaint in respect to the corporate status of defendant. Prior to the amendment the complaint had merely alleged that defendant was a corporation. The amendment, with leave of court, changed that designation so as to read a "cemetery association organized and existing under and by virtue of the laws of [Oregon]." At that juncture in the trial the defendant entered a demurrer on the ground that the complaint failed to allege facts sufficient to state a cause of action. The basis for the demurrer was that the complaint then alleged sufficient facts to bring the defendant within the charitable immunity from tort liability. The trial court sustained the demurrer and judgment was entered for defendant, plaintiff appeals.

The trial court sustained defendant's contention that the complaint, as amended, clearly brought the defendant within certain statutory provisions permitting the creation of cemetery associations; and that the effect of the statutes was to immunize the defendant from tort liability. We cannot agree.

The only allegation as to defendant's legal status is that part of the complaint already quoted. Defendant argues that the only law of Oregon to which the complaint refers is the statutes formerly found at ORS 64.010 to 64.100—the sections were repealed by the 1959 legislature. It is noted that defendant's brief cautiously avoids specific reference to any section of the statute which it claims irrevocably establishes its charitable character. We note that ORS 64.040, for example, provides the conditions by which

the property owned by such an association may be exempt from execution, taxation and condemnation:

> "The association may purchase or take, by gift or devise, and own and hold lands exempt from execution and taxation, and from any appropriation for public purposes, for the sole purpose of a cemetery and may sell it in lots, if intended to be used exclusively for burial purposes, and in no wise with a view to the profit of the members of such association. The land so held shall not exceed 600 acres; but if the land already held by the association is all practically used, the amount thereof may be increased by adding thereto not more than 20 acres at any one time."

Another section, ORS 64.080, provides similar exemptions to the individual purchasers of lots in a cemetery owned by such an association *if* the lots are held for burial purposes only. The statute also permits, but does not require, the creation of an irreducible fund. ORS 64.050. The earnings from such a fund, if created, are to be used to maintain and "adorn" the cemetery lots. There appears to be nothing in the statutes precluding the enjoyment of profit by its members except the loss of tax and other exemptions.

If it can be said, which we do not decide, that this is the only lawful means by which a cemetery association can be organized "under and by virtue" of the laws of Oregon, it is clear that these sections of the statute do not establish the defendant as a charity as a matter of law. Whether or not a given institution is, in fact, charitable is a defense that must be alleged and proved; the same as any other fact. *Ackerman v. Phys. & Surgeons Hosp.*, 207 Or 646, 288 P2d 1064, 298 P2d 1026; *Hamilton v. Corvallis Hosp. Ass'n.*, 146 Or 168, 30 P2d 9.

The complaint, as amended, did not allege any facts which would establish defendant's charitable status. The demurrer, for the reason now assigned by defendant to support it, should have been overruled.

■ However, the pleading was vulnerable for other reasons. It does not allege any breach of duty owing from the defendant to plaintiff. This issue was not urged by the defendant. The error is such that attention should be given to it and present Rule 46 be applied. It is apparent that if the problem is not disposed of now it will be back on a petition for rehearing or, perhaps, after trial. To bring the case to a conclusion we will consider if the complaint states a cause of action at all. *Hotelling v. Walther,* 174 Or 381, 384, 148 P2d 933.

The case actually went to trial on a second amended complaint. It is the allegations of that pleading that we must test. It was generally alleged that plaintiff was employed as an equipment operator for defendant and as such required to get "into a motor vehicle commonly called a 'jeep', and while in the process of stepping into said vehicle he was caused to slip and fall on the step thereof, . . .". The specific allegations of negligence charge:

"III.

"That at the time and place aforesaid there was in full effect that certain basic safety code for the State of Oregon, having the force and effect of law, which provided in part as follows:

" 'MACHINE AND EQUIPMENT GUARDS

" '3.15 All equipment with slippery decks shall be equipped with effective means to prevent slipping.

" 'VEHICLES

" '8.21 Doors or guard railings and substantial handholds shall be provided for all vehicle cabs.'

"That said defendant violated the foregoing provisions in that said vehicle was not equipped with effective means to prevent slipping on the treading surface of the step thereof and in not providing a door or guard railing and a substantial handhold for said vehicle cab.

"IV.

"That said defendant, its officers, agents and employees, were careless and negligent in one or more of the following particulars:

"1. In failing to equip said vehicle with a running board or step of nonskid design and material.

"2. In failing to provide said vehicle with a handhold for access to said vehicle cab.

"3. In failing and neglecting to make any inspection of said vehicle, or to properly inspect the same, prior to requiring this plaintiff to use the same.

"4. In failing and neglecting to use every care, device and precaution practicable to have been used without impairing the efficiency of said machine in that said vehicle could have been provided with a running board or step of design and material which would have rendered the same safe and secure for use by this plaintiff, could have provided a handhold on said vehicle cab for use by this plaintiff in gaining access thereto, and could have inspected said equipment before requiring this plaintiff to work thereon."

It is at once apparent that there was no averment that the jeep in question was being used for anything other than an ordinary motor vehicle. It was not alleged that a jeep is a motor vehicle that has a cab,

at least of the kind contemplated by the safety code. We do not judicially know that to be a fact. The allegation that the motor vehicle was one commonly called a jeep could mean no more than if it were alleged that it was one commonly called a "Buick". It alleges nothing more than that it was a motor vehicle having a common name.

■■ We accept as ordinary knowledge that a jeep, perhaps more so than ordinary passenger cars, is capable of multiple use; some of which are, no doubt, hazardous. It is probable that a jeep could be used over or upon terrain of such a nature that special safety measures for the operator might be required. That we are uncertain of. We are certain, however, that no employer should be called upon to act as a nursemaid for every employee whose duties require him to enter an ordinary motor vehicle and spoon such employee in and out of such a vehicle each time the employee is required to do so. If we were to sustain this complaint, and literally apply the sections of the safety code relied on as a requirement for all vehicles, then every vehicle used by every employee would require similar inspection, hand rail, nonskid running board and perhaps even a ramp to avoid liability. We have found no authority which even approaches such a requirement.

Since it may be possible that there were exceptional circumstances involved in the use or place of use of the jeep at the time in question, plaintiff should be given an opportunity to amend his complaint to allege any such facts. Leave to amend may be sought from the trial court. But we cannot find any duty, let alone any violation of a duty, in the complaint before us.

"It was incumbent upon plaintiff to allege facts

showing a duty of defendant to plaintiff; a breach of such duty; and a resulting injury. * * *" *Christopher v. McGuire,* 179 Or 116, 120, 169 P2d 879.

The judgment is affirmed. Plaintiff may move the trial court for permission to amend his pleading to conform to this opinion.