Argued June 6, affirmed December 29, 1967

HEATON, *Appellant, v.* FORD MOTOR
COMPANY ET AL, *Respondents.*

435 P. 2d 806

*John R. Faust, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

*Roland F. Banks, Jr.,* Portland, argued the cause for respondents. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, and Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

GOODWIN, J.

The plaintiff appeals a judgment entered after an involuntary nonsuit in a products-liability case involving a wheel on a Ford 4-wheel-drive pickup truck. The principal question is whether the plaintiff produced sufficient evidence to support his allegation that the wheel was dangerously defective.

Plaintiff purchased the truck new in July 1963 to use for hunting and other cross-country purposes as well as for driving upon paved highways. He drove the truck some 7,000 miles without noticing anything unusual about its performance. Prior to the day of the accident the truck had rarely been off the pavement, and plaintiff swore that it had never been subjected to unusual stress of any kind.

On the day of the accident, however, the truck, while moving on a "black-top" highway at normal speed, hit a rock which plaintiff described as about five or six inches in diameter. The truck continued uneventfully for about 35 miles, when it left the road and tipped over.

After the accident, the rim of the wheel was found to be separated from the "spider." Witnesses described the "spider" as the interior portion of the

wheel which is attached to the vehicle by the lug nuts. The twelve rivets connecting the rim to the spider appeared to have been sheared off. The spider, according to one witness, showed signs of having been dragged along the ground. There was also a large dent in the rim and a five-inch cut in the inner tube at a spot within the tire that was adjacent to the dent in the rim. Only three of the rivets which had held the rim on the spider were found after the accident.

The motion for a nonsuit challenges the sufficiency of the plaintiff's proof. The plaintiff's version of the evidence is that the wheel came apart and caused an accident after encountering a five-or-six-inch rock on a hard-surfaced road at highway speed. (There is other evidence in the case, but on the point in issue it does not help the plaintiff.)

■ In *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965), we held that a nonprivity user of a dangerously defective product could recover for injuries caused by the defect. Liability was specifically rationalized as strict liability in tort, although the breach of the seller's duty was a breach of warranty. There, because the product was one which, if defective, was in fact ultrahazardous (involving a high degree of danger of explosion), we did not have to decide whether a lesser degree of danger, i.e., "unreasonably dangerous" as defined in Restatement (Second) of Torts § 402A (1965), would support liability. In the case at bar, we now adopt Section 402A and hold that if the product is in fact unreasonably dangerous the manufacturer is liable for the harms caused by such a defect. It is not necessary to prove that the product is "ultrahazardous," nor that it was placed on the market "negligently." It is necessary, however, to prove that it is dangerously defective.

■ An article is dangerously defective when it is in a condition unreasonably dangerous to the user. Restatement (Second) of Torts § 402A. Unreasonable, in this context, means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser. Restatement (Second) of Torts § 402A, comment *g*. Such a definition is conceptually related to the traditional warranty of merchantable quality in the law of sales.[1]

■ In some cases the plaintiff can produce direct evidence of a mistake in fabrication or of a design which is unreasonably dangerous.[2] The user has the right to expect a reasonably safe design and reasonable quality controls in fabrication according to that design. Restatement (Second) of Torts § 402A; § 395, Comment *f*.

■ In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient,[3] the plaintiff may

[1] Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases,* 18 Stan L Rev 974, 979 (1966). See generally Dickerson, *Products Liability: How Good Does a Product Have to Be?,* 42 Ind L J 301, 305 (1967); Traynor, *The Ways and Meanings of Defective Products and Strict Liability,* 32 Tenn L Rev 363, 367 (1965).

[2] See Nader and Page, *Automobile Design and the Judicial Process,* 55 Calif L Rev 645 (1967); Traynor, *The Ways and Meanings of Defective Products and Strict Liability,* supra note 1; Wade, *Strict Tort Liability of Manufacturers,* 19 Sw L J 5, 17 (1965); Comment, *Manufacturer's Liability for Defective Automobile Design,* 42 Wash L Rev 601 (1967).

[3] Inability to produce evidence may be the result of destruction in the accident (as in fires, explosions, loss at sea, etc.) or the result of the reluctance of industrial experts to express opinions adverse to their present or potential employers. See Nader and Page, *Automobile Design and the Judicial Process,* supra note 2, at 664-668.

nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user.④ When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions⑤ concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect. The case at bar, however, is not such a case.

■ In this case planitiff failed to introduce evidence of flawed manufacture or dangerous design. His own expert witness expressed an opinion that the wheel was not defective. He now urges that this court should declare the wheel unreasonably dangerous as a matter of law for the reason that it failed to perform as an ordinary consumer would have expected it to perform. While the Restatement indicates that such a failure would permit a finding that a product is generally defective, it is for the jury rather than the court to say in the ordinary case whether a given product failed to meet the standard. See *Gherna v. Ford Motor Co.,* 246 Cal App2d 639, 55 Cal Rptr 94 (1966) ; *Hooper v. General Motors Corp.,* 123 Utah 515, 260 P2d 549 (1953) (by implication).

■■ The court's function is to decide whether the

---

④ "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A, Comment *i.*

⑤ "A product is not in a defective condition when it is safe for normal handling and consumption * * *." Restatement (Second) of Torts § 402A, Comment *h.*

evidence furnishes a sufficient basis for the jury to make an informed decision. If the record permits, the jury determines whether the product performed as an ordinary consumer would have expected. In the case at bar the record furnishes no basis for a jury to do anything but speculate.

■ Where the performance failure occurs under conditions with which the average person has experience, the facts of the accident alone may constitute a sufficient basis for the jury to decide whether the expectations of an ordinary consumer of the product were met. High-speed collisions with large rocks are not so common, however, that the average person would know from personal experience what to expect under the circumstances. Nor does anything in the record cast any light upon this issue. The jury would therefore be unequipped, either by general background or by facts supplied in the record, to decide whether this wheel failed to perform as safely as an ordinary consumer would have expected. To allow the jury to decide purely on its own intuition how strong a truck wheel should be would convert the concept of strict liability into the absolute liability of an insurer.

The argument has been made that the question of the ordinary consumer's expectations should be treated for jury purposes in the same way that the question of reasonable conduct in a negligence case is treated. But in deciding in a negligence case what is reasonable conduct, the jury is deciding in a context of "right and wrong" how someone *should* have behaved. In making this decision they are presumed to know the relevant factors. If not, such information is provided, as in a medical malpractice case where there is expert testimony as to the proper standards.

 In the defective-product area, courts have already decided how strong products *should* be: they should be strong enough to perform as the ordinary consumer expects. In deciding what the reasonable consumer expects, the jury is not permitted to decide how strong products should be, nor even what consumers should expect, for this would in effect be the same thing. The jury is supposed to determine the basically factual question of what reasonable consumers do expect from the product. Where the jury has no experiential basis for knowing this, the record must supply such a basis. In the absence of either common experience or evidence, any verdict would, in effect, be the jury's opinion of how strong the product *should* be. Such an opinion by the jury would be formed without the benefit of data concerning the cost or feasibility of designing and building stronger products. Without reference to relevant factual data, the jury has no special qualifications for deciding what is reasonable.

 Assuming that the other requirements of Restatement (Second) of Torts § 402A have been met, the jury should be allowed to find the product defective when the record contains sufficient evidence of one or more of the following: (1) a dangerous defect in manufacture; (2) an unreasonably dangerous design; (3) circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely.

In the only case we have found in which somewhat similar facts have been treated as sufficient to support a finding that a wheel which suffered a rim-spider separation was defective, there was evidence of wear prior to the accident. There was no direct evidence of an impact with a damaging obstacle. The court

held that it could be inferred that the wheel was defective (presumably because of a manufacturing flaw). *Hooper v. General Motors Corp.*, supra.

While the matter was never presented to the trial court, and thus requires no extended discussion in this appeal, the plaintiff has referred in this court to certain advertising published by the defendant, to reinforce the plaintiff's claim that a consumer would have expected the wheel in question to be engineered and manufactured in such a manner as to withstand the kind of force applied to it in this case. The plaintiff does not contend that the advertising constituted misrepresentation under Restatement (Second) of Torts § 402B, but rather that the advertising in general tends to create expectations of strength and durability under Section 402A. A general impression of durability, however, does not help a customer to form an expectation about the breaking point of a wheel. A "rugged" Ford truck could be expected to negotiate rough terrain, including five-or-six-inch rocks, at appropriate off-the-road speeds, but it does not follow that a user could expect the same thing at highway speeds. If such expectations do exist, the record should contain evidence to support the inference that they do.

Affirmed.

O'CONNELL, J., dissenting.

Plaintiff argues that the court rather than the jury is charged with the duty of determining whether the circumstances are appropriate for the application of the doctrine of strict liability. To support his view plaintiff relies upon *Loe v. Lenhardt*, 227 Or 242, 362 P2d 312 (1961) where the court, in holding that aerial spraying of chemicals is an extrahazardous activity,

said "[w]hen a question of this character is presented, it is the duty of the court to decide as a matter of law whether a given activity, in a given factual setting, is or is not extrahazardous." (227 Or at 249, 362 P2d at 316.) In the same case the court recognized that the classification of conduct for the purpose of determining whether it is extrahazardous, and therefore gives rise to strict liability, involves an adjustment of conflicting interests—"the product of a judicial balancing of the utility of the defendant's conduct with the risk of harm if it miscarried." (227 Or at 250, 362 P2d at 316.)

Applying the foregoing analysis, plaintiff argues that "In the products liability field it may thus be said that a product is 'defective' if a judicial balancing of the interests of the parties and the public indicates that the seller should be strictly liable for the particular injury involved." According to plaintiff's view, it is not the jury's function in the present case to decide "whether the wheel performed as a reasonable person would have expected." Quite to the contrary, plaintiff argues that "the pragmatic significance of strict liability is that the jury must find the defendant liable if it finds simply that his affirmative conduct produced the injury." It is plaintiff's position that the theory of strict liability should be deemed applicable whenever a person is injured as a result of exposing himself to a hazard in reasonable reliance upon the capabilities of a product as represented by the seller. The gist of plaintiff's argument is summed up as follows:

"\* \* \* It is not unreasonable to suggest that the driver of a vehicle promoted as 'solid,' 'rugged' and 'built like a truck' will subject that vehicle and its passengers to hazards to which he would not

subject a vehicle otherwise promoted. With specific reference to this case, it is not unreasonable to surmise that a driver of a vehicle so promoted who runs over a rock on the highway will not even consciously consider the possibility of stopping to check for damage because he takes it for granted that such an impact will not harm a vehicle which he has been conditioned to think of as 'solid,' 'rugged,' and 'like a truck.' "

Plaintiff, then, is asking us to "take judicial notice of facts which form part of the common knowledge of people who possess average intelligence, * * * as, for example, the capabilities of a 'jeep,' Olson v. Riverview Cemetery, 220 Or 220, 349 P2d 279 (1960)."

Apparently the majority opinion would hold that there was a failure of proof, irrespective of whether the question of strict liability is for the court or jury in a case of this kind. I disagree. If we had been presented with the same facts with the modification that plaintiff had struck a rock one inch in diameter rather than a five-inch rock, I am sure that the majority would have held that at least a jury question was made out. The beginning point of our reasoning would be that a manufacturer of automobiles must construct wheels of sufficient durability to withstand the impact of one-inch rocks, because one-inch rocks are not an uncommon obstacle on highways. A buyer could reasonably expect to have the wheel withstand such an impact and it would not be unreasonable for him to proceed on his journey after the impact. However, the buyer could not reasonably expect a wheel to remain safe after striking a rock two feet in diameter at seventy miles an hour. Somewhere along the continuum between one inch and two feet it will be necessary to draw a line. The line is drawn by deciding

whether a manufacturer should be required to construct a wheel of such durability as to withstand the impact of a rock of the size in question. Whether the manufacturer has that duty in a particular case should depend, it seems to me, upon whether the manufacturer could reasonably foresee the likelihood that the hazard would be encountered by those using the product, and this would, of course, depend to some extent upon the representations made by the manufacturer with respect to the durability of the product.

The manufacturer's conduct must be measured against a standard of reasonableness, a standard similar to that employed in determining whether a defendant is negligent. Here, however, we do not measure defendant's conduct in terms of fault but simply upon the basis of its foreseeability. A jury is just as well equipped to judge the reasonableness of defendant's conduct on this score as it is when the inquiry is made as to defendant's negligence. The members of the jury draw upon their experiences and observations and set up some kind of a standard as a measure against which to appraise the defendant's conduct in the particular case. They would be justified in concluding that the wheel in this case was unreasonably dangerous according to the test stated in Restatement (Second) of Torts § 402A, p. 352 (1965), requiring a finding that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

The majority apparently would require some evidence of what this community standard is. How is this to be done? Certainly this is not the type of question which calls for the testimony of an expert witness.

Are we to call lay witnesses to testify what "would be contemplated by the ordinary consumer"? If that is required in the present case, it would be equally necessary in an ordinary negligence case to inform the jury of the community standard on such questions as the reasonableness of conduct in driving a car with respect to speed, lookout and control.

But we submit these questions of the reasonableness of defendant's conduct to the jury and, subject to the right of the court to decide as a matter of law that the standard was or was not met, we are willing to trust the jury's judgment as to the community standard and to appraise the defendant's conduct in light of it.

I believe that the question of defendant's liability is kept from the jury in the present case not because there is a lack of evidence upon which to sustain a verdict for plaintiff, but because the majority of the court, finding the imposition of strict liability a severe burden upon the seller, attempts to limit that burden by distorting the concept of the jury's function.

SLOAN, J., joins in this dissent.