Susan D. **BRIZENDINE**, by her Guardian, David W. Brizendine, Plaintiff,

v.

**VISADOR COMPANY,** a Texas corporation; and Pittsburgh Plate Glass Company, a Delaware corporation, Defendants.

Civ. No. 66–532.

United States District Court
D. Oregon.

Sept. 17, 1969.

———————◇———————

Carl G. Helm, La Grande, Or., and Edwin J. Welsh, Portland, Or., for plaintiff.

Frank E. Day, Reiter, Day, Wall & Bricker, Portland, Or., for defendant Visador.

Lamar Tooze, Jr., Tooze, Power, Kerr, Tooze & Peterson, Portland, Or., for defendant Pittsburgh Plate Glass Co.

## FINDINGS AND OPINION

KILKENNY, District Judge:

Plaintiff, 19 years of age at the time of trial, seeks damages for personal injuries sustained when the glass portion of a door light in the First Christian Church of La Grande, Oregon, shattered in her face. The door light in question was fashioned from a kit manufactured by defendant, Visador Company, a Texas corporation. The glass included in the kit by Visador was manufactured by defendant, Pittsburgh Plate Glass Company (PPG), a Delaware corporation.

On November 12, 1964, plaintiff went to the First Christian Church of La Grande, Oregon, to a regular Thursday evening meeting of a church youth group, made up of junior and senior high school age members. These meetings were held in a meeting room in a church annex, off the main entry to the church proper. Entrance to the room was usually gained through a set of wooden double doors, each containing a 10″ by 10″ diamond-shaped glass door light positioned at about eye level. The doors opened outward by means of a door knob on the right hand door. Similarly, the doors could be locked from the inside by a button on the door knob.

Plaintiff arrived early at the church, as had several other boys and girls, and was standing with them inside the church annex awaiting the arrival of other members. She was standing at or near the double doors, just described, when a later arriving member, Stanley Bird, and his sister approached the door. Stanley was moving quickly toward the door to open it before it locked. He pulled on the door knob with his left hand. When the door did not open, he lost his balance and threw up his right hand to catch himself against the door. Stanley's hand struck the door near the top of the light, his fingers hitting the wooden portion, his palm striking and shattering the glass. Slivers or shards of the shattered glass struck plaintiff in the face severely damaging her left eye.

The door light in question was installed by Miller's Cabinet Shop, La Grande, in February, 1963. At that time, several church members brought solid wooden doors to Miller's and waited while he installed the Visador lights from his own stock. Miller did not deal with Visador directly, but acquired his stock of door lights from a Visador distributor in Portland.

Visador produced these lights in large quantities for distribution to all parts of the country. The lights come in ready-for-installation kits containing wooden frames, screws, and a 10″ by 10″ sheet of single strength "B" (SSB) glass. The frames are tooled to accept the sheet of SSB, which is about $\frac{7}{32}$ of an

inch in thickness. This particular type door light, called a utility light, has consistently been one of Visador's largest sellers since the company's inception in the early 1950's, with an estimated annual production of around 80,000 units.

Visador buys the glass for its lights from several glass manufacturers, with PPG supplying probably the bulk of their needs. The glass is purchased in carload lots. PPG admits that it supplied the glass for the light installed in the door here involved.

■ Plaintiff bases her claims against both defendants on theories of strict liability, warranty and negligence. Actions on a manufacturer's implied warranty of his product, under Oregon law, are governed by tort principles of strict liability. Wights v. Staff Jennings, Inc., 241 Or. 301, 405 P.2d 624 (1965); Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 (1967); State ex rel. Western Seed Production Corp. v. Campbell, 250 Or. 262, 442 P.2d 215 (1968), cert. denied 393 U.S. 1093, 89 S.Ct. 862, 21 L.Ed.2d 784 (1969). By reason of what was said in *Heaton* and *Western Seed*, plaintiff's warranty claim will not be separately discussed, but will be covered in the discussion of the claims against both defendants in strict liability.

## STRICT LIABILITY

Restatement (Second) of Torts § 402A, adopted in Oregon, Heaton v. Ford Motor Co., *supra*, reads:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

\* \* \* \* \* \*

In *Heaton*, the Oregon Supreme Court stated that a plaintiff could show that a product was defective by proving a mistake or flaw in the design of the product, or a mistake or flaw in the fabrication of that design. If plaintiff could not show exactly how the product was defective in one of the above ways, she could, nevertheless, establish her right to recover by showing that the product did not perform in keeping with the reasonable expectations of the user—thus creating an inference of specific defect for the trier of the fact. Of course, the defective condition proved, or inferred, must be shown to be unreasonably dangerous.[1]

The Oregon Court, in *Western Seed*, made it clear that a recovery under § 402A was not subject to statutory impediments to relief for breach of warranty such as notice, disclaimer or whether the warranty was express or implied.

Underlying the adoption of the strict liability theory in products cases are numerous theories, including, but not limited to, the following:[2]

(1) The seller, by marketing and advertising his product, has undertaken a special responsibility toward any consumer injured by it. He has induced the buyer to buy his product which, im-

1. Note: The Oregon Supreme Court in *Heaton* used the term "dangerously defective" to mean exactly the same thing as the Restatement. 435 P.2d at 808. The Court's phrasing was born out of a welter of confusion surrounding its earlier more restrictive attitude toward strict liability shown in Wights v. Staff Jennings, supra. See Comment, Strict Products Liability Theories in Oregon—Supreme Court Innovations and Counsel's Nonparticipation, 47 Or.L.Rev. 333 (1968). Clarity will be better served by following the Restatement's terminology.

2. Comment, Extension of Strict Liability To The Construction and Sale of Buildings in Oregon, 48 Or.L.Rev. 414 (1969).

plicitly at least, he represented as safe. Therefore, he should be responsible if the consumer is injured by using it.

(2) The seller is in the field for his economic benefit, and should be made to suffer the losses as well as reap the profits.

(3) If work is negligently or defectively performed, it should be anticipated that injury will result to those who come in contact with such work.

(4) The public has a right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their product.

(5) The seller is in the best position to eliminate defects.

(6) The consumer generally does not have the expertise to make an adequate inspection.

(7) The manufacturer is best able to distribute the loss of injury, which may be an overwhelming burden on the consumer, through the price mechanism as a cost of production.

(8) The manufacturer is in a better position to purchase liability insurance.

(9) Strict liability will provide a healthy incentive to manufacturers to make their products safe.

(10) An action in strict liability will avoid a multiplicity of suits.

All the experts agreed that a door light equipped with SSB glass, such as here under scrutiny, would not be safe for installation in areas where a significant amount of physical contact with the glass could be expected. Defendants' experts conceded that a gymnasium or a school cafeteria, due to the presence of children playing, or milling about, would fit within this classification. In these cases, a thicker glass or safety glass would be required. In dispute, however, is whether the entry way door to the vestibule of a church, as in the instant case, would require installation of stronger glass.

■ I find from the evidence adduced that this particular doorway was not reasonably safe when equipped with a door light containing glass of the weakness of SSB. Certainly, the likelihood of children playing, including hectically entering and leaving, at a doorway to a room where Sunday School classes and youth group meetings were regularly held is as probable as in a cafeteria.

Moreover, the distinction defendants attempt to draw between school gymnasiums and cafeterias, "public or semi-public places" on the one hand, requiring stronger glass, and churches and homes on the other, as being reasonably safe with SSB, is itself spurious. If the deciding factor in determining what strength glass is required is the likelihood of physical contact with the glass, which all parties admit, then there is no distinction between a cafeteria and a home. In fact, the likelihood of children playing roughly, and thus physical contact, is perhaps even greater in the average home than in the "public" places in which defendants concede stronger glass should be installed.

Visador, therefore, placed on the market for general distribution without restriction as to use, or caution as to the unsuitability of its product for areas of significant physical contact, a product which involved an unreasonable risk of harm to a substantial number of persons. The design was defective in that it was not designed safely for the intended use. Visador knew the bulk of its sales was for homes. Certainly, these door lights, in view of these facts, were "unreasonably dangerous". We are not faced here with the situation of the plaintiff's injury falling into a small class of uses to which the product might not be safely put, while in the great majority of cases its use would be safe. Rather, this door light equipped with SSB was unsafe and unreasonably dangerous, if utilized in any of a substantial number, perhaps even a majority, of its uses. The cost of heavier or safer glass is not of significance.

■ PPG cannot avoid liability for this defect on the ground that Visador

alone was responsible for design. PPG was well aware of the general use to which the SSB glass was put by Visador. It also knew strength limitations of the glass, its product. It knew or should have known that the product was unsafe for the use to which it was being put. Yet, it continued to sell the SSB to Visador without (1) cautioning about the danger involved in its use, or (2) specifically bringing to anyone's attention the need for and availability of safer or heavier glass. When PPG sold Visador SSB glass for installation in these door light kits for this type of distribution and sale, PPG sold a product which was unreasonably dangerous for the intended use. The glass itself contained a defect in design. The defect is that SSB glass, installed in a Visador door light, was dangerous beyond the normal expectations of the ordinary consumer.

On the issue of strict liability, I resolve all issues of fact in favor of the plaintiff. The unreasonably dangerous product was a proximate cause of plaintiff's injuries.

Plaintiff's proof shows one actual defect in the glass PPG sold to Visador. The glass Visador included in the door light kit, supplied by PPG, which Miller's installed in the doorway of the First Christian Church did not meet the specifications for thickness which PPG (and the glass industry in general) set for SSB glass.

PPG's specifications provided for a tolerance of error for SSB of from .085 to .101 inches thickness. Plaintiff's expert, Dr. Schmitt, who tested glass samples taken from plaintiff's body and clothing following the accident, testified that his measurements of those sample

shards revealed that the sheet of glass which shattered in plaintiff's face measured .076 inches.[3] Glass this thick fits within the tolerance of error for picture glass, .070 to .080 inches—a grade of glass defendants' and plaintiff's experts both agreed would be too thin for glazing purposes. Although this was a deviation from specifications of only .009 inches, we must keep in mind that this deviation further weakened an already dangerously defective product and thus was an additional proximate cause of plaintiff's injuries.

## NEGLIGENCE

Basically, the issue on negligence is whether Visador exercised due care in distributing its door light for sale without warning of limitations as to its safe use. Essentially the same issue is involved on the charges of negligence against PPG, the latter having knowledge of the uses to which the door lights were put by Visador.

■ Without regard to privity, Price v. Gatlin & Columbia Tractor & Implement Co., 241 Or. 315, 405 P.2d 502 (1965), a manufacturer has a duty to exercise reasonable care to avoid foreseeable harm to the users of his product. *Western Seed, supra.* This duty includes the obligation to know of dangers to users that might lurk in the manufacturer's product or products, Reynolds Metals Co. v. Yturbide, 258 F.2d 321 (9th Cir. 1958), cert. denied 358 U.S. 840, 79 S.Ct. 66, 3 L.Ed.2d 76 (1958) (Oregon Law), and in cases where the user is not likely to discover them himself, duty to warn of those dangers. Boyl v. California Chemical Co., 221 F. Supp. 669 (D.Or.1963), Restatement

---

3. Defendants' attorneys objected to the inclusion in the pre-trial order, and to the admission of any evidence at trial, of any reference to a specific defect in the glass supplied by PPG and installed by Visador in the door light kit which injured plaintiff on the grounds of surprise. They claim that in all earlier versions of the pre-trial order plaintiff led them to understand that she would claim that the

use of SSB, as such, made the Visador door light defective, and would not claim defect or flaw in the specific piece of glass.

The wording of plaintiff's contention in the pre-trial order against PPG in strict liability is general enough—in fact it is very general—to encompass proof of a specific defect.

(Second) of Torts, §§ 388, 394. I have no difficulty in finding that SSB was not a safe glazing material to be used in areas where persons might reasonably be expected to come into significant contact with the glass. Nor do I have any difficulty in finding that the church door, here under scrutiny, would fit in this category. Unquestionably, the doorway under scrutiny was one where a significant amount of physical contact could be expected, and the installation of the SSB door light necessarily involved an unreasonable risk of harm. Already mentioned is the fact that the doorway to the meeting rooms was expected to regularly accommodate a substantial number of church members, including teenage children. Defendants' theory that if the glass, as here, was placed higher than the area a person would normally push to open a door, this would lessen the possibility of contact and a light glass could be used, is not persuasive. Certainly, it is not determinative of the issue. The light in question was some five feet from the bottom door line, approximately at plaintiff's eye level. While this location might somewhat decrease the likelihood that people may push on the glass, it materially increased the likelihood of serious injury in the event the glass was used to open the door.

Both Visador and PPG knew or, in the exercise of reasonable diligence, should have known, of the strength limitations of SSB. Each knew of the marketing practice of Visador, selling to a general market where the product was likely to be installed in a great variety of locations, including those where a heavy glass or safety glass would be required. Having this knowledge, each had a duty to warn purchasers of the danger.

Neither Visador nor PPG can disclaim liability for failing to warn by arguing, as they do, that the choice of glass to be installed in the light was left to architects, glaziers, or the user himself. The fact that other persons may also have a duty to warn does not lessen the duty of Visador and PPG. Restatement (Second) of Torts § 388, Hills v. McGillvrey, 240 Or. 476, 402 P.2d 722 (1965). Nor is failure to warn excused by arguing that the warning would only have reached distributors, architects, or glaziers and might not have reached the ultimate user. Restatement (Second) of Torts, § 388, comments *l* and *n*. Visador and PPG were each negligent in the specifications as charged and each specification was a proximate cause of plaintiff's injuries.

## CONTRIBUTORY NEGLIGENCE

Defendants called numerous young persons to testify on what occurred immediately prior to and at the time of plaintiff's injuries. Their testimony, although conflicting in a few particulars, with one exception, did not connect the plaintiff with the "horse-play" going on at the time. The one witness who testified that plaintiff had participated in this activity is completely discredited by the fact that his account of the accident is wholly inconsistent with the testimony of the others who were present. The overwhelming weight of the testimony supports the plaintiff's version of what occurred. Defendants have failed to establish by a preponderance of the evidence that the plaintiff was negligent in any one or more of the particulars as charged or that plaintiff's actions proximately contributed to her injuries.

## DAMAGES

At the time of her injury, the plaintiff was an attractive girl, 15 years of age, and of normal health and intelligence. As a result of the occurrence, she is completely blind in one eye. This impairment has narrowed the activities in which plaintiff can or will participate and has considerably limited her choice of a future career. Without question, she suffered a significant amount of pain at the time of her injury, during the course of her hospitalization and post-hospitalization treatment. The

pain presently persists in the form of headaches, which especially affect her when she attempts to study. Growing out of the injury is a discoloration of her blind eye. This has required a resort to prosthetic devices. She has difficulty tolerating a cosmetic contact lens. There is a probability of the use of an artificial eye. Either treatment involves heavy expense, continual care and considerable discomfort. At the time of trial, plaintiff's life expectancy was approximately 57 years.

■ The law, of course, does not furnish me with a fixed standard by which to measure the exact amount of general damages. The law does require that the compensation allowed be reasonable. Having found that defendants are liable, I must award to plaintiff such sum as will reasonably compensate her for pain and discomfort suffered by her as a proximate result of the injury and for such pain and discomfort, including anxiety, which it is reasonably probable that plaintiff will suffer in the future from the same cause. Moreover, I must allow to the plaintiff such sum as will reasonably compensate her for any interference with her normal and usual activities which she has sustained and that which she will probably sustain in the future as a result of the injury in question. Additionally, I must award plaintiff damages for the permanent injury in the loss of her eye, such damages to continue during the period of her natural life. After a full and complete analysis of all of the testimony with reference to plaintiff's injuries, I award her the sum of $150,000.00 as general damages. Of course, plaintiff is entitled to recover her special damages, if any, as shown by the proof. Defendants' objections to plaintiff's Exhibits 7a, 8, 8a, 9a, 10a, 29, 30, 31, 34, 35 and 37 are overruled.

The foregoing shall serve as my findings and conclusions. A conforming judgment shall be drafted, served and presented by counsel for plaintiff.