Argued January 8, reversed and remanded February 11, 1970

STOREY, *Appellant, v.* EXHAUST SPECIAL-
TIES AND PARTS, INC., *Defendant,*
and
FORESIGHT VENTURES, INC., *Respondent.*

464 P. 2d 831

*Bernard Jolles,* Portland, argued the cause for appellant. With him on the briefs were Franklin, Bennett, Des Brisay & Jolles, Portland.

*Kenneth E. Roberts,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, and Ridgway K. Foley, Jr., Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

SLOAN, J.

This is a product's liability case involving an alleged defect in construction and design of an aluminum automobile wheel. At the trial the jury returned a verdict for defendant. Plaintiff appeals from the judgment entered on the verdict.

About two weeks before the event occurred, which injured plaintiff, he bought four aluminum wheels for his car from defendant Exhaust Specialties & Parts, Inc. They had been manufactured by defendant Foresight Ventures, Inc. The accident occurred as plaintiff was driving his automobile on an approach onto Interstate 5 in Portland. The approach was 15 feet wide and curbed on both sides. While on the ap-

proach the left rear wheel of the car bumped the curb. After plaintiff had driven onto the highway and had increased his speed, the car started weaving. Plaintiff was unable to control the car and it collided with a stanchion or pole supporting a highway sign. It is plaintiff's theory that the bump of the left rear wheel against the curb broke or cracked the wheel which in turn caused the loss of control of the car and the collision. The complaint alleged that the wheel was defective in construction and design.

■ The first two assignments of error are related. As a part of his case plaintiff called a Mr. Pansky as an adverse witness. Pansky was president of defendant Foresight Ventures, Inc., the manufacturing company. Plaintiff offered to prove by this witness that the standard used to test the strength and quality used in defendant's manufacture of aluminum wheels was the ordinary steel wheel with which most cars are equipped. The offer was refused. By another witness, who had qualified as an expert, plaintiff offered to prove that tests made by the expert witness would indicate that the aluminum wheels on plaintiff's car were not as strong as standard steel wheels. This offer was refused. The only stated basis of the objections to the evidence and of the trial court's ruling was that it was improper to attempt to compare aluminum wheels with steel wheels.

The evidence was offered to meet the required need for evidence expressed in *Heaton v. Ford Motor Co.*, 1967, 248 Or 467, 435 P2d 806. The attempt to compare the aluminum wheels with a standard that is commonly used and accepted did not impair the relevance of the evidence. In everyday experience people constantly compare the specifications or qualities of one kind of material against another for a given use.

Also, it is not unusual to use a material like steel as a standard of comparison to test the strength of other materials. The relevance of the comparison here is evident because this was the standard or comparison adopted by the defendant manufacturer for its own purposes. This in itself is also some evidence that defendant manufacturer recognized that consumers would anticipate that aluminum wheels would have the impact resistance that steel would possess.

The offered evidence would have provided the jury with information which would better enable it to decide whether or not the "wheel failed to perform as safely as an ordinary consumer would have expected." *Heaton v. Ford Motor Co., supra,* 248 Or at 473. This was the kind of evidence held to be lacking in *Heaton.*

The majority opinion in *Heaton,* particularly when compared with the dissent, emphasizes the necessity of presenting evidence to a jury when the common experience of people would not enable jurors to know whether the structure of a wheel was sound enough to meet expectations of a consumer. It would not be unreasonable for a jury to decide that an automobile wheel should be designed and built to withstand an impact against a curb, such as happened here. To reach such a conclusion, however, in a case like this, as in *Heaton,* it was necessary to have evidence to provide the "relevant, factual data" needed to make an informed judgment. *Heaton v. Ford Motor Co., supra,* 248 Or at 474. The evidence offered had some relevance to the issue the jury had to decide and should have been admitted.

■ A third assignment claims error for the giving of the following instruction:

"The intended purpose of an automobile does

not include its participation in collision with other objects, despite the manufacturer's ability to foresee the possibility that such conditions may occur."

This instruction was taken verbatim from the decision in *Evans v. General Motors Corporation* (7th Cir 1966) 359 F2d 822. The *Evans* decision is inconsistent with our decision in the *Heaton* case. The statement used for the instruction is not the law of Oregon, for *Heaton* distinctly holds that a manufacturer can be held for the foreseeable consequences of the use of his product. The intended use of an automobile, and its vulnerable parts like a wheel, is not, of course, for the purpose of engaging in deliberate collisions. But the foreseeability or likelihood of a collision, certainly of a wheel to a curb, is too certain to even cause doubt.

The case must be reversed and remanded for a new trial.

McAllister, J., concurs in result.