Argued and submitted November 17, 1980, affirmed May 11, 1981

# GILMOUR,
*Appellant,*

*v.*

# NORRIS PAINT & VARNISH CO., INC. et al
*Defendants,*

# BINKS MANUFACTURING CO.
*Respondent.*

(No. 105,997, CA 16820)

627 P2d 1288

J. Michael Alexander, Salem, argued the cause for appellant. With him on the briefs was Brown, Burt, Swanson & Lathen, P.C., Salem.

J. Philip Parks, Salem, argued the cause for respondent. With him on the brief was Parks & Bauer, Salem.

Before Joseph, Presiding Judge, and Warden and Young,* Judges.

WARDEN, J.

* Young, J., *vice* Warren, J.

**WARDEN, J.**

Plaintiff appeals the judgment resulting from the granting of the motion of Binks Manufacturing Co. (hereinafter referred to as defendant) for a directed verdict in plaintiff's action based on strict product liability.[1] Plaintiff's left index finger required amputation after an airless paint sprayer manufactured by defendant injected paint thinner into his finger when he placed his finger over the sprayer's nozzle and pulled the trigger to clear the nozzle of debris.

In his complaint, plaintiff alleged 1) that there was a design defect because the defendant failed to provide a nozzle guard; and 2) that defendant failed to warn users of the "hazards involved in the normal use of said gun without said protective nozzle guards."[2] Plaintiff contends on appeal that these issues should have been submitted to the jury. Defendant responds that "plaintiff did not meet the prima facie requirements of a design defect case that he produce evidence of a safer, practicable * * * design for the airless sprayer," that the warnings were adequate, that defendant was entitled to assume that the warnings and instructions would be read and heeded, that obliteration of the warning on the sprayer was a substantial change in the condition of the product after it left the manufacturer and that no warning was necessary as plaintiff was aware of the hazards involved. Defendant further contends that plaintiff's failure to perceive that the sprayer was pressurized, rather than any alleged failure to warn or provide a guard, was the cause of his injury, and therefore, plaintiff failed to prove that any defect in design or inadequacy of warnings caused plaintiff's injury.[3] In this case we need not reach the issues concerning plaintiff's evidence of inadequate warning and design defect, because plaintiff failed to prove that either a design defect or failure to warn was a *cause* of the injuries suffered by him.

---

[1] Plaintiff did not seek relief based on negligence or warranty.

[2] Plaintiff did not allege that the defendant should have warned that, without appearing operable and under pressure, the sprayer could be pressurized and in turn could be hazardous. That issue was not raised at trial or on appeal.

[3] Defendant does not contend that it proved the affirmative defenses of misuse or assumption of risk as a matter of law.

Plaintiff, who had never used an airless paint sprayer before this occasion, testified that:

"I just plugged [the sprayer] in. * * * I remember thinking that the plug-in or the outlet didn't have any electricity in it. * * * I remember thinking that I either kicked off the breaker when I plugged it in or it had never been turned on. * * * I noticed * * * [the sprayer] had some fuzz on the nozzle. * * * I had gone to wipe it and pulled the trigger like I had for years. * * * I didn't know there was pressure on the gun, but—just the minute I pulled the trigger why the motor came on at the same time."

Plaintiff had used air-type sprayers previously and had cleared them effectively by putting his finger against the tip and pulling the trigger.[4]

Plaintiff testified that he was familiar with high pressure and that he knew high pressure was dangerous, having worked on diesel fuel injectors which were similar to the sprayer. He had also worked with high pressure sources as a drill rig mechanic. He explained that his familiarity with high pressure did not involve dangers from fluids being injected, but rather the danger caused by stress on a container which could explode. On cross-examination, he was asked if he knew the sprayer was pressurized, and plaintiff testified that he did not. He testified that he did not think he heard the sprayer make any sounds indicating that it was operating and that he did not believe there was any power to the sprayer "because the gun wouldn't run." He did say that he knew the sprayer switch was in the "on" position when he pulled the trigger.[5]

---

[4] This method of cleaning a sprayer is apparently safe, if one is using an air sprayer.

[5] The following colloquy occurred between defendant's attorney and plaintiff:

"Q And I think on your direct examination you said you're aware of the danger of high pressure?

"A Yes, sir.

"Q And you have had some experience with, I think you said working with diesel engine injections?

"A Yes, sir.

"Q How much pressure do those operate under?

"A Oh, they operate under high pressure—it depends—1,800 pounds or better.

A mechanical engineer, whom plaintiff qualified as an expert witness, explained that once pressure is built up in an airless paint sprayer it remains after the machine is turned off, unless there is an internal leak or the pressure is "bled off" by using a release valve. Plaintiff testified that he "went through * * * quite briefly" the written material provided by the manufacturer. Plaintiff testified he did not notice the warning on the end of the nozzle and that he was unable to read the warning on the tank because of "overspray" which obscured the warning.[6] Plaintiff placed in evidence two "guards" manufactured and sold by defendant as optional equipment and another guard which was developed by plaintiff's expert. None of the guards would have physically prevented plaintiff from injecting his finger with spray from the nozzle.

The trial court granted the directed verdict, reasoning that guards would not have prevented the accident and concluding, therefore, that plaintiff did not provide evidence of an unsafe product. As to the warning, the

---

"Q Okay. And then I think you said you were sure you would have—you were aware of the danger of this machine here if it was under pressure?

"A Yes, sir.

"Q Okay.

"A I think I'm sure I would be. Or was.

"Q So really the problem, Mr. Gilmour, is not that you weren't aware of the danger, you were just unaware that this machine was under pressure, isn't that the fact?

"A There isn't any danger when it is—when it doesn't have any pressure.

"Q All right. But you're complaining about the inadequate warning and they didn't tell you what the dangers were but really you were aware of the dangers, isn't that right? You just didn't know the machine was under pressure?

"A Well, I certainly didn't know it was under pressure.

"Q And that is because someone else who had used it previously had left the machine on and had not turned the pressure release valve, is that correct?

"A That has to be correct."

[6] The warning on the tip of the sprayer's nozzle stated:

"WARNING: IMPROPER USE CAN CAUSE INJURY-Read Instructions."

The warning placed on the tank of the sprayer stated:

"WARNING

"Fluids under high pressure can penetrate the skin and cause serious injury. Always relieve pressure in pump before cleaning or removing spray gun tip."

trial court concluded that the warning given was adequate as a matter of law. Most importantly, the court stated that:

"[Plaintiff] knew—he had worked on diesel engines in which the fluid injection is put in at high pressure. And he knew that was dangerous. He also stated that if he knew there was danger—and really the reason why this occurred is because he did not realize that when he plugged it in that the machine started. Or that it started when he pulled the trigger. That is when he was hurt."

In our review after a directed verdict, we consider the evidence and all reasonable inferences in the light most favorable to the plaintiff. *Allen v. The Heil Company,* 285 Or 109, 112, 589 P2d 1120 (1979). Oregon has adopted the Restatement of Torts (Second), § 402A as the standard of a seller's strict liability.[7] *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967). Causation is discussed in relation to strict liability in tort in Hursh and Bailey, American Law of Products Liability 2d, 691, § 4:17 (1974).

"In addition to presenting proof as to the condition of the defendant's product, the plaintiff in a strict liability case is required to establish that such condition proximately caused his injuries or damages. This requirement has been recognized in the Restatement of Torts, * * * Thus, it has been stated that the heart of the theory of strict liability in tort is the requirement that plaintiff's injury must have been caused by some defect in the product."

This burden of showing causation was not met by plaintiff. Assuming *arguendo* that plaintiff proved that the

---

[7] Section 402A of the Restatement of Torts (Second) provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the prepartion and sale of his product, and

"(b) the user or consumer has not brought the product from or entered into any contractual relation with the seller."

defective and dangerous conditions which he alleged existed, there is no causal connection between plaintiff's injuries and the defendant's failure to warn that the spray could penetrate the skin and poison upon injection or its failure to provide a guard of the kind introduced in evidence. Plaintiff was injured, according to his own testimony, because he failed to perceive that the machine was operable and under pressure, not because he was unaware of the danger of injection. Because none of the nozzle guards in evidence would prevent placing a finger in close proximity to the nozzle, as plaintiff did, none would serve to prevent an injury such as his. Plaintiff having failed to make out a prima facie case on the issue of causation, the judgment based on the trial court's granting of defendant's motion for a directed verdict must be affirmed.

Affirmed.