Molly Black HOFFMAN, Marty Butler, Roland Ezelle Estridge, Amanda Estridge, Raymond Tarlton, Mary Louise Tarlton, William Clyde Thompson, Myrtle McDonald Thompson, Reid Garrison, Delores Ann Garrison, Joel M. Meggs, and Rachel Pemberton Plaintiffs,

v.

VULCAN MATERIALS COMPANY, Defendant.

No. 198CV00152.

United States District Court,
M.D. North Carolina.

Dec. 21, 1999.

Henry T. Drake, Drake & Pleasant, Wadesboro, NC, J. Bryan Plumlee, Drake & Pleasant, Rockingham, NC, for plaintiffs.

Ronald R. Davis, Womble Carlyle Sandridge & Rice, Richard T. Rice, Womble Carlyle Sandridge & Rice, H. Grady Barnhill, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for defendant.

## MEMORANDUM OPINION AND ORDER

ELIASON, United States Magistrate Judge.

This case comes before the Court on defendant's motion for summary judgment. That motion has been fully briefed by both parties and is ready for decision.

### Facts

On February 9, 1998, plaintiffs, who are property owners, filed a complaint in state court in Richmond County, North Carolina. The complaint alleges that defendant has and is committing nuisance and trespass against them through its operation of a quarry near their homes.[1] The quarrying process allegedly creates excessive dust, flying rocks, noise, and blasting shocks. Plaintiffs contend that their health, peace of mind, land, and homes have been damaged as a consequence of these invasions and unpleasantries. In their complaint, they each seek an amount in excess of $10,000 for damage to their homes and property from the explosions, an amount in excess of $10,000 for the trespass and nuisance created by the dust and rocks which land on their property, and an amount in excess of $10,000 in punitive damages. They also asked for an injunction to prevent defendant's continuing trespass and nuisance through dust, noise, and explosions. Defendant removed the case to this Court.

Although these are the basic overall facts as alleged in the complaint, it is important to note that this case is being prosecuted by nine different plaintiffs, each of whom are in a different situation with sometimes markedly different evidence.[2] Therefore, the facts must be reviewed as to each individual plaintiff. Also, defendant employed experts on air quality, sound, structural engineering, and blasting. Plaintiffs did not counter with any experts. In fact, the only non-plaintiff testimony presented by plaintiffs was by McRae Construction in the form of estimates to repair cracks in plaintiffs' homes.

### Molly Black Hoffman

Plaintiff Molly Black Hoffman has lived in her home for over fifteen years and is unsure of when it was built. Defendant's expert, A.O. White, estimates that the house is fifty or more years old.

Hoffman has several complaints related to defendant's quarry operation. First, she claims that over the past several years, defendant's blasting damaged her ceilings, walls, porches, and kitchen cabinets to the point that they needed to be replaced. She also claims that some of these things need to be repaired or replaced again. According to reports submitted by McRae Construction Company, Inc., these repairs

---

1. Defendant notes that also near plaintiffs' properties is an asphalt plant, paper mill, and a highway bypass under construction, but that only Vulcan has been sued. It further points out that although the quarry has been in operation for fourteen years, plaintiffs have only recently started complaining and that the bypass runs between Vulcan and is closer to plaintiffs' properties.

2. This action was originally brought by twelve plaintiffs. However, plaintiffs Marty Butler, Roland Ezelle Estridge, and Amanda Estridge previously agreed to the dismissal of their claims.

add up to $772.40. Second, she states that she sees dust coming from defendant's quarry onto her property and that this dust sometimes makes it difficult to breath outside, clogs her air conditioning filter, and causes her to clean her home constantly. She admits that some of this dust comes from a highway which is being constructed near her house. Third, Hoffman objects to the noise caused by both the blasts from the quarry and the trucks and train cars which haul gravel from the quarry. She states that the blasts occur during daytime hours, but wake her if she is sleeping and impair her ability to relax in her home. As for the train cars, she says that they make noise in the early hours of the morning. Finally, Hoffman contends that she has found small rocks in her yard and on her roof (which she believes the rocks have damaged). She has never seen any of these rocks land or fly through the air.

### Raymond Tarlton

Raymond Tarlton lives in a house which was built in 1964. Tarlton has lived in it since that time. His main complaint is that defendant's blasting is damaging his house. He believes that the vibrations from the blasts have caused cracks in the interior and exterior of his house which will cost $18,804 to repair, according to McRae. He also complains of dust from the blasting and the operation of the quarry, stating that the wind blows dust onto his property from defendant's conveyor belts and that a white cloud is produced when blasts are set off. Mr. Tarlton claims to have seen this cloud come onto his property on one occasion. Mr. Tarlton says that the dust affects his breathing due to allergies and coats his car to the point that if he washes it one day, it needs to be washed again the next day. Finally, Mr. Tarlton complains that the noise from defendant's blasting is loud enough to cause his house to crack and pop and to shake his rafters, and that the noise from defendant's machinery begins "way before day" and interferes with his sleep. In the

three years prior to his affidavit, he has heard hundreds of blasts. Tarlton and his wife say that the overall level of noise makes relaxation difficult in their home.

### Mary Louise Tarlton

Mary Louise Tarlton is Mr. Tarlton's wife and shares a residence with him. Generally, she joins in his complaints about the dust, noise, and damaging vibrations. She affirms his testimony about the rafters shaking as a result of defendant's blasting. Additionally, she states that she has allergies which she believes may be attributable to dust produced by defendant, and that she once saw the storm door to her kitchen knocked out of its hinges by a blast from the quarry. She does not remember how long ago this occurred or whether the quarry was owned by defendant or a predecessor at the time the door fell.

### William Clyde Thompson

William Thompson lives in a home which is roughly thirty-six years old. Mr. Thompson states that some of the sheetrock inside his house has cracks in it and that his two-year-old porch has cracks in it. He apparently attributes these to defendant's blasting and, based on McRae's estimate, claims that $4,900.43 in repairs are needed. He also states that the blasts are loud and forceful enough to rattle the windows and doors so that he thinks they will crack. Besides this, Mr. Thompson complains that he has sometimes smelled gunpowder and seen the air "kind of smoky like" after defendant blasts. He contends that this causes a black dust to constantly cover his porch and deck and cause "an ugly mess" when it rains. Finally, Mr. Thompson states that he hears what sounds like rocks being dumped into boxcars late at night.

### Myrtle McDonald Thompson

Myrtle Thompson is Mr. Thompson's wife and shares a residence with him. She joins her husband's complaints and adds that she thinks the dust from the quarry has caused her to have eye irritation which

is not alleviated by prescription eye drops, and headaches. She states that she does not have these problems while at work or on vacation. She also tells of one day in particular when she witnessed a cloud of dust from one of defendant's blasts which was so thick that it looked like "an eclipse of the sun." This cloud covered the area in dust which was so thick that Ms. Thompson was afraid to leave her house for a short time. It covered Ms. Thompson's car in dust to the point that when she did go out, she had to wash off her windshield before she could see through it to drive. She says that this was the only time she has seen a dust cloud this bad.

### Reid Garrison

Reid Garrison is claiming that defendant's actions have damaged a ten- to fifteen-year-old building which he once used as an auto repair shop. Mr. Garrison's complaints all stem from the results of defendant's blasting. He states that the blasts have been forceful enough to rattle the windows, disrupt his business, and, once, knock a clock off the wall. He also claims that vibrations from the blasts have caused cracks to appear in the floor of his shop and in the walls. McRae's report alleges that $4,025 in repairs are needed. In March of 1997, he states that he saw a cloud of dust come over the shop as a result of one of defendant's blasts, but has not seen other dust clouds.

### Delores Anne Garrison

Delores Garrison is Reid Garrison's wife and apparently only joins her husbands claims. There is nothing in the record to indicate that she has additional claims or that she has presented any evidence of her own.

### Joel M. Meggs

Joel Meggs lives in a home which is approximately 38 years old and which has been occupied by the Meggs family for most of that time. Like the other plaintiffs, Meggs' house has cracks in the interior and exterior which he attributes to defendant's blasting. According to McRae,

these problems will require $7,494.79 to fix. Meggs also states that he sees dust come over from the quarry like a fog and believes that the dust is somehow related to his congestive heart failure and breathing problems. He agrees that trucks traveling from the quarry cause some of the dust problems and admits that most of the dust he sees on his property is already there by the time he sees it.

Finally, Meggs complains about the noise from defendant's quarrying. While he does say that some of the blasts are not so bad, he claims that others sound like tremendous bombs and are sufficiently strong to wake him up. This is particularly disturbing to him because he is handicapped and in bad health. He also describes the noise from defendant's rock crusher and trucks as being terrible. All of the noise causes him fear, irritation, stress, and constant annoyance.

### Rachel Pemberton

Rachel Pemberton resides in a house that was built during the 1940's and was acquired a little over five years ago by Pemberton through inheritance. She has two main complaints about defendant's conduct. First, she alleges that defendant's blasting shakes her whole house, has caused her cabinets to pull loose, has cracked many of her walls on the inside, and has cracked the bricks on the outside of her home. Relying on McRae, she states that these damages will cost $12,139.57 to repair. Second, she relates that she has seen a large dust cloud come onto her property following one of the blasts, has seen other dust clouds at other times following blasts, and believes that defendant is responsible for ongoing dust problems. She feels that the dust has caused or contributed to sinus and asthma problems which she and her children have and has caused two of her children to suffer from nose bleeds. The dust also causes her to dust three times a week and makes it difficult to breath.

## Defendant's Facts

Defendant does not deny that it engages in blasting which may produce some noise or vibration in plaintiffs' homes and which may cause some dust to be propelled into the air. Nor does it deny that its general operations produce some dust or noise. However, defendant strenuously maintains that any vibrations, dust, or noise produced did not cause any of the medical or structural damages claimed by plaintiffs. It further argues that any vibrations, dust, and noise cannot be attributed solely to it and/or that these do not rise to the level necessary to create a nuisance for which plaintiffs can recover damages. It shows that its mining permit requires it to take seismographic measurements at the dwelling closest to the blasts, that all vibrations caused by the blast have been within its permit, and that the owner of the nearest property has not made any complaints about the blasts.

In further support of its arguments, defendant has submitted four expert reports. The first report was presented by Dr. John Richards and Todd Brozell. They are engineers who performed test measurements of the air quality at and around defendant's quarry before and after blasting on December 15 and 17, 1998. The Richards/Brozell report concluded that defendant's blasting had little effect on particulate concentrations in the area surrounding the quarry and stated that all measurements were within ranges that the Environmental Protection Agency (EPA) considers healthy. Finally, the report noted that the highest particulate concentrations at monitoring sites near some of plaintiffs' homes were recorded at times when vehicles passed on a nearby road.

Defendant's second expert report is a report by Dr. Carmen L. Taylor who conducted sound measurements of the quarry's day-to-day operations. He conducted these measurements in front of the Pemberton, Hoffman, Tarlton, and Meggs residences and recorded decibel levels of 47, 42, 36, and 50, respectively. Taylor reports that, by comparison, walking through the woods is approximately 54 decibels, conversational speech is around 55 decibels, and water running in a sink is 64 decibels. Lastly, Taylor notes that, upon completion of a nearby highway bypass, any noise produced by the quarry's daily operations will be made irrelevant by road noise.

Defendant's next report is authored by the previously mentioned A.O. White, Jr. White is a licensed engineer who examined all of the buildings which plaintiffs allege have been damaged by defendant's blasting. In each case, White concluded that no damage to these structures could be attributed to the blasting and that, in fact, the damage was so markedly different from the type caused by blasting that blasting could be affirmatively eliminated as a cause. White states that the damage is being caused by foundation settlement, aging, or temperature changes.

Defendant's final expert report comes from David E. Siskind who is president of a company that provides consulting services on blasting, vibrations, and acoustics. Siskind examined hundreds of seismic readings made at or near some of plaintiffs' homes and inspected the damages which the blasting was alleged to have caused. Siskind states that vibrations of at least .50 in./sec. are required to damage plaster, vibrations of at least .75 in./sec. are required to damage modern wallboard, and vibrations of at least 2 in./sec. are required to crack foundations and driveways. Based on his measurements, which showed that vibrations from defendant's blasting shook the closest structures at no more than .36 in./sec. and typically only at .08 in./sec., Siskind concluded that the damages complained of by plaintiffs were not caused by defendant's blasting. These levels are within the federal standards of .75 in./sec. for homes near coal mines. He also concluded that the damages did not appear to have been caused by blasting, but by other causes, such as natural mate-

rial properties, foundation sites, and construction deficiencies.

### Legal Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* "The summary judgment inquiry thus scrutinizes the plaintiffs' case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence,* that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.,* 871 F.2d 479 (4th Cir.1989).

 Because all of plaintiffs' claims arise under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. *Sanderson v. Rice,* 777 F.2d 902, 903 (4th Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.,* 10 F.3d 243 (4th Cir.1993).

### Discussion

#### Trespass

 In their complaint, plaintiffs set out their damages in a single count alleging trespass and nuisance. In their brief opposing defendant's motion for summary judgment, plaintiffs advance their trespass claims under the theory of strict liability for ultra-hazardous activity. Under both North Carolina and common law, a trespass is defined as any unauthorized entry upon the land of another. *Matthews v. Forrest,* 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952); *Loe v. Lenhardt,* 362 P.2d 312, 315, 227 Or. 242, 248 (1961). Such unauthorized entry entitles the possessor to at least nominal damages. *Id.; Hoaglin v. Decker,* 713 P.2d 674, 676, 77 Or.App. 472, 475 (1986). The *Restatement (Second) of Torts* §§ 158, 164, 165, 166 (1963–1964), suggests a modification of the common law so as to only impose liability for unintentional intrusions when they are a result of negligent or reckless conduct or ultrahazardous activities. One state has explicitly adopted the *Restatement* rationale and modified its common law. *Loe,* 362 P.2d at 315–17, 227 Or. at 248; *Hoaglin,* 713 P.2d at 676 n. 3, 77 Or.App. at 475. North Carolina is in apparent concurrence with this position. *Schloss v. Hallman,* 255 N.C. 686, 691, 122 S.E.2d 513, 517 (1961) (unintentional and non-negligent entry onto land is not trespass unless done through ultra-hazardous activity); *Guilford Realty & Ins. Co. v. Blythe Bros. Co.,* 260 N.C. 69, 72, 131 S.E.2d 900, 903 (1963)(blasting can be trespass by ultra-hazardous activity regardless of negligence, adopting *Restatement* rule). Moreover, trespass as a result of negligent or reckless conduct or ultra-hazardous activi-

ty requires a showing of actual damages to plaintiffs or their properties. *Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 482, 157 S.E.2d 131, 139 (1967)(citing *Guilford* ); *Hoaglin*, 713 P.2d at 676, 77 Or.App. at 476; *Johnson v. Tipton*, 103 Ill.App.3d 291, 296–297, 59 Ill. Dec. 179, 431 N.E.2d 464, 470–471 (1982). It is on this latter element that all plaintiffs' trespass claims falter.[3]

Defendant has not argued that vibrations, rocks, and dust, if they, in fact, went onto plaintiffs' properties as a result of blasting would not count as entries onto plaintiffs' properties. The Court notes that there is evidence in the record to support the fact that entries of all of these things, except rocks, have occurred at various times on some or all of plaintiffs' properties as a result of defendant's blasting. What is missing, according to defendant, is proof that any of these entries caused any damage to plaintiffs' properties. The Court must now look at the record to determine whether plaintiffs have proffered sufficient admissible evidence for a jury to find that defendant's blasting caused the damage alleged. There must be enough evidence for a jury to infer that the blasting was a "probable," as opposed to only a "possible," cause of plaintiffs' damages. *Harrison v. Edison Brothers Apparel Stores, Inc.*, 814 F.Supp. 457, 464 (M.D.N.C.1993). " 'Alternative possibilities as to the cause of an event are not enough where the defendant is liable under one and not the others and where no basis for a rational choice among the alternatives is provided.' " *Id.quoting Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 168 (4th Cir.), *cert. denied*, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957).

■ Plaintiffs' trespass claim caused by blasting is based on their contention that the shocks and vibrations from defendant's blasting have damaged their homes. As set out above, plaintiffs' specific allegations vary in detail, but generally claim that the blasting has caused cracks in the interior and exterior of their homes. Plaintiffs' affidavits and depositions show that they believe that the blasting is the cause of these cracks, that the cracks have worsened or been more numerous during the time that defendant has operated the quarry, and that they do not know of any other possible causes for the cracks. They also generally agree that the blasts are forceful enough to create loud noises and shake their houses. Although plaintiffs have introduced evidence of the estimated repair costs of damages which they attribute to the blasting, they have not introduced any expert testimony as to the cause of that damage.[4] As a matter of law, the Court

---

**3.** In addition to plaintiffs' inability to show actual damages arising out of trespass due to blasting, plaintiffs' claim for trespass caused by rocks also suffers from lack of proof. First, plaintiffs have failed to show any negligence or reckless acts on behalf of defendant. Perhaps more importantly, plaintiffs fail to show that any rocks in the yards or on the roofs came from defendant's quarry, as opposed to coming from the nearby road and bypass construction, or from other human action, such as children throwing rocks into the yards or onto the roofs. No one identified the rocks in the plaintiffs' yards as coming from defendant's quarry. Consequently, the rock trespass claims must be dismissed on that basis.

It is also true that dust clouds can constitute a trespass. *See Hall v. De Weld Mica Corp.*, 244 N.C. 182, 185–86, 93 S.E.2d 56, 58–59 (1956). But, as the *Hall* court also noted, the continuance of such an invasion then constitutes a nuisance. *See* also *Hanna v. Brady*, 73 N.C.App. 521, 327 S.E.2d 22, *rev. denied*, 313 N.C. 600, 332 S.E.2d 179 (1985) (dust from quarry). While plaintiffs have not shown injury to their properties or themselves as a result of exposure to dust, except from conclusory allegations, they do show that they have had to engage in extra work. *See Hall*, 244 N.C. at 186, 93 S.E.2d at 59. Thus, plaintiffs arguably may have forecasted sufficient evidence of damages for a trespass claim based on negligent operations. However, plaintiffs fail to submit evidence of negligence, and because the invasion is a continuing one, it is more properly examined as a nuisance. *Hall*, 244 N.C. at 184, 93 S.E.2d at 57.

**4.** Defendant objects to plaintiffs' evidence of the repair costs on the ground that it is expert testimony which plaintiffs seek to introduce

finds that plaintiffs' evidence is insufficient to allow a reasonable jury to infer that defendant's blasting is the probable cause of the damage complained of by plaintiffs.

The deficiency in plaintiffs' presentation is apparent. They have produced sufficient evidence to allow a jury to find that entries have occurred on their properties. They have also produced sufficient evidence for a jury to find that their houses or buildings are in need of repair. Their failure lies in not producing a single piece of evidence connecting those two facts which would allow a jury to find that it was probable, rather than merely possible, that the entries caused the damages. In response to defendant's motion for summary judgment, plaintiffs can cite only to their own statements, which are no more than suppositions. As defendant points out in its reply brief, no matter how many times plaintiffs state that they believe that the blasting causes the cracks, the statements are not enough to establish causation. Plaintiffs have not produced any expert testimony on causation and no plaintiff reports actually seeing a crack develop during one of the blasts.[5] All of the "damage" is noticed only at some time after the blasts.[6] Finally, plaintiffs have made no attempt to separate the damages caused by normal aging of the homes from the damage allegedly caused by blasting. Plaintiffs fail to identify the time and date of any specific cracks which arose or worsened when a blast occurred. Their statements are general and speculative.

In contrast to plaintiffs' lack of evidence, defendant has introduced its own evidence of causation. Defendant's expert, White, states that all of the damage which plaintiffs attribute to the blasting is actually being caused by foundation settlement, aging, and temperature cracking, and that the damage is so dissimilar to the type expected by blasting, that blasting can be affirmatively ruled out as a cause. Another of defendant's experts, Siskind, agrees that seismic readings show that defendant's blasting is not strong enough to damage plaintiffs' houses. Therefore, the only evidence in the record concerning the cause of the damage to plaintiffs' properties is defendant's unchallenged evidence that it was not caused by blasting. Plaintiffs ask the Court to disbelieve or discount defendant's expert reports, but fail to provide a reasoned basis for the Court to do so. They do not supply their own expert to point out the deficiencies in defendant's expert reports. Therefore, defendant's expert reports must be accepted.

In the end, plaintiffs have not shown that defendant's blasting is the probable, rather than possible, cause of any of their alleged damages. No jury could find for plaintiffs under these circumstances and defendant is entitled to summary judgment on all of plaintiffs' trespass claims

even though they never designated an expert witness. While this could indeed cause a problem, the Court does not need to make a final ruling on the matter because it does not affect the decision of defendant's summary judgment motion.

**5.** Plaintiffs do state in their affidavits that they have seen new cracks develop and old cracks grow "after the defendant's blasting." These statements are too general and ambiguous to support an interpretation that the cracks appeared during or a few seconds after the blasts. Such a reading would contradict the deposition testimony of some of the plaintiffs who stated that they had not seen cracks develop contemporaneously with the blasts. (Meggs Dep. at 24–25; Mary Tarlton Dep. at 17–18(only damage actually witnessed was a

door falling, possibly before defendant owned quarry)). Also, plaintiffs have not argued for this interpretation of those affidavits.

**6.** Though expert testimony may not be absolutely required in North Carolina in such cases, it is clear that plaintiffs have great difficulties without it. *Compare Trull v. Carolina–Virginia Well Company Inc.*, 264 N.C. 687, 142 S.E.2d 622 (1965) (insufficient proof of causation of damage from well drilling vibrations even when plaintiffs were in house at time of damage and watched damage occur, but no expert was presented), *with Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 157 S.E.2d 131 (1967) (similar circumstances, but case went to trial where plaintiff had expert testify that damages were related to blasting).

with respect to damage to structures caused by blasting. *Harrison* at 466.

## Nuisance

In this section, the Court examines those claims arising under nuisance, in accordance with plaintiffs' brief. The dust, noise and vibration in this case are properly classified and analyzed under the doctrine of nuisance. *See Watts v. Pama Manufacturing Co.*, 256 N.C. 611, 124 S.E.2d 809 (1962); *Hall*, 244 N.C. at 184, 93 S.E.2d at 57. The term "private nuisance is a field of tort liability rather than a single type of tortious conduct." *Morgan v. High Penn Oil Co.*, 238 N.C. 185, 193, 77 S.E.2d 682, 689 (1953). Here, plaintiffs contend that the nuisance alleged in the present case is a nuisance *per accidens*. In order to establish such a nuisance, plaintiffs must show (1) improper or unreasonable use of defendant's property, (2) which caused a substantial interference with plaintiffs' use and enjoyment of their properties.

Whether a defendant's use of its property is unreasonable is not always easy to define.

'One cannot use his property so as to cause a physical invasion of another person's property, or unreasonably deprive him of the lawful use and enjoyment of the same, or so as to create a nuisance to adjoining property owners ... and any unreasonable ... use which produces material injury or great annoyance to others, or unreasonably interferes with their lawful use and enjoyment of their property, is a nuisance which ... will render him liable for the consequent damage.' 39 Am.Jur., *Nuisances* s. 16, pp. 297–298.

*Watts*, 256 N.C. at 617, 124 S.E.2d at 814. In determining unreasonableness, factors which must be examined include,

the surroundings and conditions under which defendant's conduct is maintained, the character of the neighborhood, the nature, utility and social value of defendant's operation, the nature, utility and social value of plaintiffs' use and enjoyment which have been invaded, the suitability of the locality for defendant's operation, the suitability of the locality for the use plaintiffs make of their property, the extent, nature and frequency of the harm to plaintiffs' interests, priority of occupation as between the parties, and other considerations arising upon the evidence. No single factor is decisive; all the circumstances in the particular case must be considered. *McCarty v. Natural Carbonic Gas Co.*, *supra* [189 N.Y. 40, 81 N.E. 549 (1907) ]; *Clinic & Hospital v. McConnell*, *supra* [241 Mo.App. 223, 236 S.W.2d 384 (Mo.App. 1951)].

*Id.*

The interference must rise to the level of a substantial annoyance, material physical discomfort, or injury to the health or property of plaintiffs. *Rudd v. Electrolux Corporation*, 982 F.Supp. 355, 369 (M.D.N.C.1997); *Morgan* at 193, 77 S.E.2d at 689; *Pake v. Morris*, 230 N.C. 424, 426, 53 S.E.2d 300, 301 (1949). Whether an annoyance is substantial is not judged according to the particular sensibilities of the plaintiffs, but according to those of a reasonable person. *Watts*, 256 N.C. at 618, 124 S.E.2d at 814.

Plaintiffs claim that defendant has used its property improperly or has conducted its business in an improper location, but the parties have done little to address this in their briefs to the Court. Rather, defendant argues that plaintiffs cannot succeed on their nuisance claims because they cannot show that any interference rises to the level of a *substantial* interference.

In their depositions, affidavits, and answers to interrogatories, plaintiffs have given evidence of four types of irritation which defendant's business allegedly causes and which could create the substantial interference necessary to constitute a nuisance. These irritations are noise,

dust, vibration, and rocks.[7]

■ As an initial matter, the Court notes that two plaintiffs stand apart from the others as far as the nature of the complaints they have made. Reid Garrison's claims center almost totally around the alleged blasting damage to his shop building. He cannot prove such damages and so cannot use it to establish his nuisance claim. Outside of his testimony about blasting damage, he does state that he once saw a dust cloud. However, he has made no statement that he had an ongoing dust problem or that the dust interfered in any way with his use and enjoyment of his property. Likewise, he does not voice any complaints about day-to-day operational noise or rocks. His only complaint, other than his remarks about blasting damage, is that the noise and concussion from defendant's blasting sometimes disrupted his auto repair business. He does not state how often this occurred, tell how or to what extent the blasts disrupted his business, or explain why auto repair required quietness. Overall, Mr. Garrison has given only scant and conclusory evidence that defendant's operations would have constituted a nuisance as to him. No jury could find that his use of the property had been substantially and unreasonably interfered with based on the evidence in the record. Therefore, defendant's motion for summary judgment is granted as to Mr. Garrison's nuisance claim.

As set out earlier, Garrison's wife, Delores Garrison, has presented no evidence of her own and is apparently relying only on Mr. Garrison's claims and evidence. Because his nuisance claim fails, defendant's motion for summary judgment must be granted as to Ms. Garrison's nuisance claim as well.

■ As for the remaining plaintiffs, their nuisance allegations are much more extensive and are sufficiently specific to survive summary judgment. The individual allegations of each plaintiff are set out above with some specificity. Generally, the plaintiffs, as a group, report seeing dust come from defendant's quarry either as a result of blasting or from defendant's daily operations. They state that this dust invades their homes so that they must clean more often, that it coats their automobiles, that it coats the outside of their houses, that it makes it difficult for many of them to breath, or that it irritates their eyes. Defendant counters by pointing out that dust comes from elsewhere, such as the highway construction, and that the air quality is not harmful. While these factors may well constitute substantial mitigation, it does not necessarily eliminate dust as a nuisance, at least in conjunction with noise, vibration, and rocks.

Plaintiffs' statements are also in general agreement as to the alleged noise nuisance created by defendant's day-to-day operations and the noise and vibration nuisance created by defendant's blasting. Seen as a whole, plaintiffs' evidence tends to show that defendant's daily operations create a more or less constant level of noise. Defendant agrees that noise is created, but contends it is at a tolerable level compared to other surrounding background noises and not sufficient to constitute a nuisance. More importantly, several plaintiffs also complain of noise either late at night or early in the morning sufficient to disturb their sleep. *See Hanna v. Brady*, 73 N.C.App. 521, 524, 327 S.E.2d 22, 25, *rev. denied*, 313 N.C. 600, 332 S.E.2d 179 (1985). These sounds have been described as the sound of rocks being dumped into boxcars and as being terrible. Defendant's evidence does not contradict these statements and even if defendant did, that would create an issue of credibility which is beyond the scope of summary judgment.

7. Before addressing plaintiffs' nuisance evidence, the Court first notes that plaintiffs may not rely on damage to their houses in support of nuisance, because, as previously discussed, they have failed to show that the damage was proximately caused by defendant's quarrying. Nor may they rely on evidence of rocks because these have not been tied to defendant.

As for the blasting, plaintiffs agree that defendant has set off hundreds of blasts in the past three years. Most of the plaintiffs say that they have had no warning of these blasts. As a result of these blasts and the resulting noise and vibration, plaintiffs claim they have suffered fear, stress, and irritation. Although the blasts occur during the day, some plaintiffs have been awakened by the blasts or have had their rest disturbed. Others testify that they have heard their windows and doors rattle and shake or that the rafters of their house pop and shake as a result of the explosions.

The Court does note that the evidence of nuisance is somewhat slim. *Contrast Hanna*, 73 N.C.App. 521, 327 S.E.2d 22 (operating 19 hours a day, well into the night, can hardly talk, dust all over the house and in food, and scant use of wetting device). The most significant evidence comes from the reports of episodic noise and vibration early or late in the day. The Court cannot tell the precise extent, level, and frequency as to each plaintiff. The same is true for nuisance by dust because some plaintiffs report dust clouds moving onto their property. There are alternative sources for dust. It may well be that a jury would not find nuisance as to some or all of the plaintiffs or that any damages would not be great. Some plaintiffs present a stronger case than others.

With this perspective and viewing the evidence in totality, there is sufficient evidence for a jury to find that defendant's operations have substantially interfered with plaintiffs' use and enjoyment of their respective properties. Defendant has attempted to counter this with evidence of the social utility of its operations. It also submits expert reports showing that the sounds it creates are not excessively loud and that its operations fall within certain official guidelines. It has also attempted to show that some of the dust and noise may come from sources other than the quarry, such as road construction or trucks for which defendant claims it is not responsible. While these arguments point to significant problems which plaintiffs may have to overcome at trial, they do not foreclose any reasonable chance of recovery. For one thing, these factors also bear on the issue of reasonableness which will vary because of location, utility, etc. These outstanding issues are best decided by a jury using all the factors discussed earlier.

In sum, whether defendant's operations are improper or unreasonable under the circumstances and whether plaintiffs' rights have been substantially interfered with are quintessential jury questions. This Court's research has produced many nuisance cases, a number of which involve evidence similar to that produced by the parties in this case. The one consistent theme in these cases is that, almost without fail, they proceed to trial.[8] This research is particularly compelling when it is remembered that this is a federal court attempting to mirror the result of a state court. It would appear that the balancing of societal costs and impositions on businesses and residents are best left for decision by the community in the form of the jury.

As the court noted in *Watts*, 256 N.C. at 617, 124 S.E.2d at 814, vibration caused in one locality may be a nuisance, but not so in another locality unless excessive and unreasonable, producing actual physical discomfort and annoyance to persons of

**8.** *In re Wildewood Litigation*, 52 F.3d 499 (4th Cir.1995) (directed verdict after trial); *Watts v. Pama Manufacturing Co.*, 256 N.C. 611, 124 S.E.2d 809 (1962) (remanded for retrial); *Morgan v. High Penn Oil Co.*, 238 N.C. 185, 77 S.E.2d 682 (1953) (remanded for retrial); *Hall v. De Weld Mica Corp.*, 244 N.C. 182, 93 S.E.2d 56 (1956) (damages and injunction for plaintiff upheld); *Pake v. Morris*, 230 N.C. 424, 53 S.E.2d 300 (1949) (injunction issued); *Mewborn v. Rudisill Gold Mine*, 211 N.C. 544, 191 S.E. 28 (1937) (judgment for defendants at trial); *Holton v. Northwestern Oil Co.*, 201 N.C. 744, 161 S.E. 391 (1931) (judgment for defendant after trial); *Hanna v. Brady*, 73 N.C.App. 521, 327 S.E.2d 22, *rev. denied*, 313 N.C. 600, 332 S.E.2d 179 (1985) (upholding injunction issued after jury trial).

ordinary sensibilities. *Id.* In this case, for plaintiffs to prevail, they will have to show that the blasting operations by defendant produced unreasonable dust, noise, and vibration under the circumstances existing and that as a result, plaintiffs suffered substantial injury and loss of value to their houses. *Id.* 256 N.C. at 618, 124 S.E.2d at 814. The question of reasonableness involves relative values, looking at the entire situation impartially and objectively, considering the interests of the people harmed as well as the interests of the defendant and the community.

Consequently, the Court deems the remaining material issues on nuisance not to be suitable for decision at this stage of the proceedings. Therefore, defendant's motion for summary judgment is denied as to the nuisance claims of Molly Hoffman, Raymond Tarlton, Mary Tarlton, William Thompson, Myrtle Thompson, Joel Meggs, and Rachel Pemberton. All other claims will be dismissed.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (docket no. 31) is granted as to all of plaintiffs' trespass claims, granted as to Reid and Delores Garrison's nuisance claims, and denied as to the nuisance claims of all remaining plaintiffs.